912 A.2d 268

COMMONWEALTH of Pennsylvania, Appellee

v.

Damon JONES, Appellant

Commonwealth of Pennsylvania, Cross–Appellant

v.

Damon Jones, Cross–Appellee.

Nos. 409 CAP, 425 CAP.

Supreme Court of Pennsylvania.

Submitted Nov. 18, 2004.

Decided Dec. 29, 2006.

204

208

Amy Zapp, Harrisburg, Hugh J. Burns, Jr., Philadelphia Dist. Attorney's Office, for the Com. of PA.

Billy Horatio Nolas (No. 409), Michael Wiseman (No. 425), Philadelphia, for Damon Jones.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER AND BALDWIN, JJ.

## OPINION

Justice NEWMAN.

Damon Jones ("Jones") appeals from the Order of the Court of Common Pleas of Philadelphia County ("PCRA court") denying portions of his Petition for Post–Conviction Relief pursuant to the Post Conviction Relief Act ("PCRA").[1] The Commonwealth cross-appeals the Order of the PCRA court granting relief in the form of a new penalty hearing. For the reasons set forth herein, we affirm the Order of the PCRA court insofar as it denied a new trial and vacate the Order to the extent that it granted a new penalty hearing.

## FACTS AND PROCEDURAL HISTORY

The facts and procedural history herein recapitulated are taken in large part from Chief Justice Emeritus Flaherty's Majority Opinion on direct appeal, *Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931 (1992). In August 1982, Sylvester Williams ("Williams") confronted Ernest Wright ("Wright") in the courtyard of a housing project in Philadelphia. He demanded that Wright stop selling drugs in that location and took $200.00 from Wright. Williams later spoke with Isaiah Givens ("Givens"), who assured Williams that there would be no acts of reprisal from himself, Jones, or Portie Robertson

1. 42 Pa.C.S. §§ 9541–9546.

("Robertson"). Nevertheless, on the following day, Jones, accompanied by Givens and Robertson, entered the courtyard; each of the three men then began to fire their weapons at Williams who was near the steps of a building that fronted the courtyard. In total, the perpetrators fired approximately twenty shots towards Williams. Numerous people were also in the courtyard; two of them were killed by the gunshots,[2] and six others were seriously wounded.[3] Williams was not hit. Jones, Givens, and Robertson fled but were soon apprehended by the police.

The three defendants were tried jointly. The jury found Jones guilty of two counts of first-degree murder and six counts each of aggravated assault, criminal conspiracy, and possessing an instrument of a crime.[4] After finding two aggravating circumstances and no mitigating circumstances, the jury sentenced Jones to death for both murders.[5] Jones filed post-verdict motions and supplemental post-verdict motions totaling ninety claims of error. During the course of three months in 1987, the trial court held an evidentiary hearing on Jones' allegations that trial counsel was ineffective.[6] These claims were denied, and the trial court formally

2. Those killed by the shooting were Reginald Hines and Maurice Jones.

3. Those individuals injured during the shooting were Gregory Taylor, Vaughn Carter, Barry Williams, Ronald Otto Green, Nassia Ford, and Andrew Gilmer.

4. 18 Pa.C.S. § 2502(a); 18 Pa.C.S. § 2702; 18 Pa.C.S. § 903; and 18 Pa.C.S. § 907 respectively.

5. The jury found two aggravating circumstances: (1) that in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7); and (2) that the defendant had been convicted of another federal or state offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable, 42 Pa.C.S. § 9711(d)(10). The single, unfound mitigating circumstance submitted to the jury was the age of the defendant at the time of the crime, 42 Pa.C.S. § 9711(e)(4).

The trial court imposed a sentence of death pursuant to 42 Pa.C.S. § 9711(c)(1)(iv), which requires a death sentence if the jury finds at least one aggravating circumstance and no mitigating circumstances.

6. An evaluation of claims of ineffective assistance of counsel was appropriate at that stage because the matter pre-dated the decision of

imposed the death sentence compelled by the jury. This Court affirmed the conviction and sentence of Jones on direct appeal. *Commonwealth v. Jones*, 530 Pa. 591, 610 A.2d 931 (1992).[7]

In July of 1994, Jones filed a *pro se* Petition for a Writ of *Habeas Corpus* in the United States District Court for the Eastern District of Pennsylvania. *Jones v. Love*, 94-CV-4257 (E.D.Pa.1994). Michael Wiseman, Esq., ("Wiseman") who is current counsel, entered an appearance on behalf of Jones. Following litigation in the district court, the United States Court of Appeals for the Third Circuit remanded the Petition to the district court for dismissal without prejudice to permit exhaustion of claims in the state courts. *Jones v. Love*, (C.A. No. 96-9005) (Order of May 14, 1999).

On January 16, 1997, while his *habeas* Petition was pending, Jones filed a timely Petition pursuant to the PCRA. After assigning the matter to a different judge, the PCRA court gave defense counsel until March 15, 2000, to file a supplemental amended Petition. The PCRA court heard argument on whether to grant a hearing on the issues raised by the supplemental and amended Petition on July 26, 2000.[8] The court granted a hearing on three issues and dismissed all other claims.

Prior to the hearing, Jones filed a discovery Motion requesting the hand-written notes of the trial prosecutor taken during *voir dire*. He alleged that the prosecutor engaged in racial discrimination during the jury selection process. The PCRA court granted the Motion on July 26, 2001. The Common-

this Court in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), requiring that all claims of ineffective assistance of counsel be reviewed as a part of a collateral appeal.

7. Jones was represented by Richard E. Johnson, Esq., at trial, by David Rudenstein, Esq., during post-verdict motions, and by Bernard L. Siegel, Esq., on direct appeal.

8. The three issues on which the hearing was granted were: (1) whether trial counsel was ineffective for not presenting mitigating evidence during the penalty phase; (2) whether defendant was denied the right to a meaningful appeal where the notes of testimony of *voir dire* were never transcribed and the tapes were lost; and (3) whether defendant is entitled to a new trial based on after-discovered evidence.

wealth filed a Motion for Reconsideration, and the PCRA court subsequently ordered the Commonwealth to produce the prosecutor's hand-written jury selection notes in all cases tried before 1983 that ended in a guilty verdict for first-degree murder. At the request of the Commonwealth, the PCRA court certified the matter for interlocutory appeal. On June 21, 2002, this Court reversed the PCRA court's Order, holding that Jones' claim of racial discrimination was not cognizable. *Commonwealth v. Jones*, 569 Pa. 229, 802 A.2d 1232 (2002). We remanded the case on November 5, 2002.

The PCRA court completed the evidentiary hearing and subsequently granted a new penalty hearing, finding that trial counsel was ineffective for failing to present: (1) mental health mitigation evidence, pursuant to 18 Pa.C.S. § 9711(e)(3) ("Section 9711(e)(3)"); and (2) other evidence of mitigation, pursuant to 18 Pa.C.S. § 9711(e)(8) ("Section 9711(e)(8)") (known as the "catch-all mitigator"). On July 31, 2003, the PCRA court filed an Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) denying several of Jones' claims and explaining the reasoning behind its grant of a new penalty hearing.

## REVIEWABILITY OF CLAIMS

Both Jones and the Commonwealth appealed the decision of the PCRA court. Jones presents the following seventeen claims:

(1) The jury instructions violated Due Process of Law because they reduced the prosecutor's burden of proof;

(2) The admission at trial of the hearsay identification of Nassia Ford violated various of the rights of Jones;

(3) Prosecutorial misconduct pervaded the trial;

(4) The Commonwealth discriminated against African–American venirepersons in its exercise of preemptory jury challenges;

(5) The failure to provide Jones with trial transcripts denied him rights under the state and federal constitutions;

(6) Jones' rights were violated by the prosecution's concealment of an agreement made with Sylvester Williams and the trial court's subsequent failure to strike his testimony.

(7) The trial court's instructions to the jury were improper;

(8) Jones' constitutional rights were violated by the trial court's constant criticisms of co-defense counsel;

(9) Jones' rights to a fair capital trial under the Sixth and Fourteenth Amendments and his rights under the confrontation clause were abridged when the trial court admitted a newscast from the evening of the murder;

(10) The reasonable doubt instruction violated due process;

(11) The trial court failed to instruct the jury properly on all of the elements of first-degree murder and aggravated assault in violation of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970);

(12) The trial court's instructions on aggravated assault violated *Commonwealth v. Nichols,* 692 A.2d 181 (Pa.Super.1997);

(13) Jones' conviction violated *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980);

(14) Jones is entitled to relief from his conviction and death sentence because the information and jury instruction omitted essential elements of the offense, namely a specific intent;

(15) Cumulatively, the myriad errors in Jones' trial violated his rights under the Pennsylvania and United States constitutions;

(16) Jones is entitled to an evidentiary hearing; and

(17) Discovery.

(Brief of Jones at iii-v). The Commonwealth, in its cross-appeal, raises two issues:

(1) Did the PCRA court abuse its discretion when it granted an evidentiary hearing and did the PCRA court err when it granted Jones a new penalty hearing?

(2) Did the PCRA court properly dismiss Jones' claims that were not cognizable under the Post Conviction Relief Act?

(Brief of Commonwealth at 3).

Our standard of review of the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 356 n. 4 (1995). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S. § 9543(a)(2).[9] Further, these issues must be neither previously litigated nor waived. 42 Pa.C.S. § 9543(a)(3).

A claim is previously litigated under the PCRA if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2). On review of Jones's conviction and Judgment of Sentence, we denied relief on the underlying claims that he now raises in issues 6, 7, and 9 and

9. An appellant is entitled to PCRA relief if his conviction or sentence arose from the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543(a)(2).

in portions of issue 3. *See Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931, 939–40 (1992) (issue 6); *id.* at 944 (issue 7); *id.* at 942 (issue 9); *id.* at 939, 940–42, 942–44 (portions of issue 3). As we recently held in *Commonwealth v. Collins,* 585 Pa. 45, 888 A.2d 564, 573 (2005), an allegation of ineffective assistance of counsel is not previously litigated within the meaning of the PCRA merely because its underlying claim was raised on direct appeal. Nevertheless, the above issues are not cognizable notwithstanding *Collins* because Jones fails to argue that this Court erred in denying relief with respect to any of the underlying claims upon which the issues are premised.[10]

An allegation is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S. § 9544(b). In the instant matter, Jones brings several such claims.[11] Jones concedes that most of the issues he raises are waived. He contends, however, that this Court should review these claims as they are brought under the rubric of ineffective assistance of counsel and are thus reviewable in the current context. The Commonwealth avers that the versions of all of Jones' claims sounding in trial court error, prosecutorial error, and trial counsel ineffectiveness were available to him on direct appeal, where he was represented by counsel other than trial counsel. Since these claims could have been raised on appeal, the Commonwealth argues that these claims are now waived pursuant to the PCRA.

In his brief to this Court, Jones includes a section asserting the overall ineffective assistance of prior counsel, and a brief paragraph, at the most, at the conclusion of each substantive

10. Additionally, issue 4 is not cognizable because Jones simply attempts to relitigate, without couching in terms of ineffective assistance, a claim that we already deemed waived. *See Commonwealth v. Jones,* 569 Pa. 229, 802 A.2d 1232, 1232 (2002) (*per curiam*) (reversing PCRA court's discovery order allowing Jones to pursue his *Batson* claim because "[Jones], who was tried in 1983, never raised or preserved a *Batson* claim at trial").

11. The issues that Jones waived include issues 1, 2, 3, 5, 8, 10, 11, 14, 15, 16, and 17.

argument averring that counsel was ineffective for failing to raise the issues discussed in the claim. In none of these claims, however, does Jones offer more than a conclusory assertion of error—failing to mention or discuss any lack of a reasonable basis for the actions taken by prior counsel or any resultant prejudice.

At the time that Jones filed his consolidated Petition for Post–Conviction Relief, the jurisprudence of this Court was not clear regarding whether claims, otherwise waived for failure of the defendant to raise them, were reviewable where boilerplate language was used to re-frame them as ones of ineffective assistance of counsel. *See Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 (2003) ("The manner by which a petitioner preserves, through pleading and presentation in his briefs, and proves a claim of layered ineffectiveness sufficient to warrant relief in a meritorious case . . . has been a source of disagreement and confusion."). Consistent with the approach we took in our decisions during the time period when Jones filed his consolidated PCRA Petition, in the instant case we will review his ineffective assistance of counsel claims, despite the cursory language utilized in his brief to overcome waiver.[12] We assume that Jones intended the portion of his brief entitled "Appellant's Statement Regarding Cognizability" (Brief of Jones at ii) to apply to all of his

**12.** The willingness of this Court to allow appellants to bring claims of ineffective assistance of counsel where meager arguments were presented is aptly illustrated by several of our decisions from that time. For example, in *Commonwealth v. Gilbert Jones,* 572 Pa. 343, 815 A.2d 598, 606 (2002), we stated that although we must strictly adhere to the standard governing claims of counsel ineffectiveness, this Court has previously demonstrated a willingness to afford latitude in construing the pleadings in a capital PCRA proceeding. Noting a division among the Justices of this Court, our decision in *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 525 (2001), stated that:

The majority [in *Commonwealth v. Marrero,* 561 Pa. 100, 748 A.2d 202, 203–04 n. 1 (2000),] found that a claim of ineffective assistance on the part of appellate counsel that was asserted generally and in a summary fashion in the appellant's brief in the *statement of questions involved* was sufficient to overcome an asserted waiver of the claim. Three Justices, however, took the position that, given the manner of its framing, including the lack of elaboration and specificity, the claim was waived. . . .

succeeding arguments. As such, claims 1, 2, 5, 8, 10, 11, 14, 15, 16, 17, and portions of issue 3 are not deemed unreviewable because of the manner in which Jones presented them.

 Further, an issue is waived where it was not presented in the original or amended PCRA petition below. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 706 (1998) (noting that a claim for post-conviction relief cannot be raised for the first time on appeal to this Court); *Commonwealth v. Laird*, 555 Pa. 629, 726 A.2d 346, 354 (1999). With this in mind, we now dismiss claims 12 and 13, and a portion of claim 3, deeming them waived as they were not raised below.

In summary, we conclude that the following claims of Jones are properly reviewable by this Court: 1, 2, portions of issue 3, 5, 8, 10, 11, 14, 15, 16, and 17.

## DISCUSSION

 To warrant relief based on a claim of ineffective assistance of counsel, a defendant must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). We have interpreted this standard to require a petitioner to prove that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused appellant prejudice. *Commonwealth v. Todaro*, 549 Pa. 545, 701 A.2d 1343, 1346 (1997). Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Darrick Hall*, 549 Pa. 269, 701 A.2d 190, 203 (1997).

## APPEAL OF JONES

We begin our discussion of each claim as did Jones, by presenting the underlying claim directly, without couching it in terms of ineffective assistance. Because we find that each claim lacks arguable merit, we conclude our analysis of each issue at that point, pursuant to our decision in *Hall, supra.*

## ISSUE 1—JURY INSTRUCTION ON FIRST–DEGREE MURDER

Jones contends that his first-degree murder convictions were obtained in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution because the trial court's instructions were flawed in two respects.[13] First, Jones avers that the trial court erred when it permitted the jury to infer his specific intent to kill from his alleged use of a deadly weapon on the vital organs of unintended victims. Second, he believes that the trial court improperly permitted the jury to find that he possessed a specific intent to kill based upon the acts of his co-conspirators. Jones charges that these errors violated the mandate of *In re Winship*, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that the prosecution prove each element of the crime charged beyond a reasonable doubt. Contrary to the contention of Jones, when reviewed as a whole, the trial court properly instructed the jurors.

■ Jones begins his initial argument by agreeing that, because the prosecution's theory was that Jones intended to kill Sylvester Williams, instead killing two bystanders, the trial court properly instructed the jury on the principle of transferred intent.[14] Jones argues, however, that the instruction given violated his due process right as there was no rational connection between the proven facts and the ultimate fact presumed by the jury. (Brief of Jones at 17–18).

13. As to his first argument in support of this claim, the same analysis applies to both the federal and state claims of constitutional violations. See *Commonwealth v. Reginald Anthony Hall*, 574 Pa. 233, 830 A.2d 537, 549 (2003).

14. The trial court's explanation to the jury of transferred intent was:
 Where one kills the wrong person or inflicts serious bodily harm upon the wrong person by shots which were intended to seriously harm or kill another, third person, is guilty of criminal homicide and the same degree of criminal offense with respect to inflicting serious bodily injury as if the shots had killed or seriously harmed his intended victim.
 (Notes of Testimony ("N.T."), 5/18/83, at 6006).

■■ In order to find a defendant guilty of first-degree murder, a jury must find: (1) a specific intent to kill; and (2) malice. Pa. Suggested Standard Criminal Jury Instruction 15.2502A (1979). Pursuant to the doctrine of transferred intent, the intent to murder may be transferred where the person actually killed is not the intended victim. 18 Pa.C.S. § 303(b)(1). Where the prosecution is arguing transferred intent, as it did in the instant matter, the instructions to the jury are considered proper if they merely "suggest [ ] to the jury a possible conclusion to be drawn if the State proves predicate facts, but do[ ] not require the jury to draw that conclusion." *Francis v. Franklin,* 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). The suggested conclusion, however, violates due process where it is not one that reason and common sense justify based on the facts of the specific case. *Id.* at 314–15, 105 S.Ct. 1965 (citing *Ulster County Court v. Allen,* 442 U.S. 140, 157–63, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)). In order to satisfy due process, there must be a "rational connection" between the proven facts and the ultimate fact that the instruction permits the jury to presume, and the latter must be more likely than not to flow from the former. *Ulster County Court,* 442 U.S. at 165, 99 S.Ct. 2213.

In the present case, the trial court instructed the jury that it could "infer legal malice from the intentional use without legal excuse or legal justification of a deadly weapon on a vital part of the body of a victim," (N.T., 5/18/83, at 6020), and that it could also find specific intent:

As to [the facts of this case] the law holds, with respect to that type of evidence, for your consideration that, where anyone, without sufficient cause or provocation, unlawfully kills another person by using a deadly weapon upon a vital part of the body with a manifest intention to so use it, an inference may be drawn in the absence of qualifying circumstances by common knowledge that such use of a deadly weapon is likely to cause death.

Thus, as was the case with malice, previously explained to you, further under Pennsylvania law, an intent to kill may

be inferred by reason of the killer's use of a deadly weapon to a vital part of the body of his victim.

(*Id.* at 6027–28).

■ Jones believes that where the killing of the bystanders was accidental, it is irrational to infer malice and specific intent from the fact that the bullet struck a vital portion of the unintended victim's body. This argument fails. The very purpose of the transferred intent instruction is to permit appropriate inferences of malice and specific intent to flow to an unintended victim. Thus, the only question before us is whether the inference described by the trial court in the instant case met the requirements of due process. The trial court specifically stated that the jurors "may" draw an inference and that an intent to kill "may" be transferred. The instructions clearly permitted the jury to reach these conclusions, but nothing in the language used demanded or in any other way required the jury to make this finding. The instructions, therefore, were proper because they were in the nature of a "permissive inference."

The remaining question is whether the permissive inference is justifiable in light of the proven facts. The facts establish that Jones intended to kill Williams and that he possessed both the malice and the specific intent to do so. Transferring this intent to an unintended victim is permitted by statute and easily meets the requirement of a rational connection between the proven facts and the inference. Thus, this claim fails.

■ Second, Jones contends that the trial court's instructions regarding "conspiratorial liability" violated due process because they permitted the jury to convict him of first-degree murder without a separate finding that he, rather than his co-conspirators, possessed a specific intent to kill.

■ Appellate review of a charge must be based on an examination of the instruction in its entirety to determine whether it was fair or prejudicial. *Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61, 70 (1983), *cert. denied, Ohle v. Pennsylvania,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986). Pursuant to the Pennsylvania Standard Jury Instruc-

tions, the trial court instructed the jurors that in order to convict a defendant of criminal conspiracy they must find beyond a reasonable doubt that he acted with the intent of promoting or facilitating the commission of a crime. (N.T., 5/18/83, at 5983–84). The jurors were further instructed that to find that a defendant was in fact an accomplice, they must conclude that he acted with the intent of promoting or facilitating the commission of a crime. (*Id.* at 5993). The trial court then instructed the jury that "in order to find the defendant guilty of murder of the first degree, you must find that the killing was a willful, deliberate, and premeditated act. You must ask yourselves the question, did the defendant have the willful, deliberate, premeditated specific intent to kill at the time of the killing?" (*Id.* at 6023–24 (spacing modified)).

When the instructions are properly read as a whole, it is clear that the trial court correctly instructed the jury without violating the due process rights of Jones. In *Commonwealth v. Huffman,* 536 Pa. 196, 638 A.2d 961 (1994), we found this type of argument persuasive. However, this Court ultimately concludes, like the PCRA court below, that the instant claim is sufficiently distinguishable from *Huffman* and lacks merit. In *Huffman,* the trial court charged the jury as follows:

Thus, in order to find a Defendant guilty of murder in the first degree, you must find that the Defendant caused the death of another person, or that an accomplice or co-conspirator caused the death of another person. That is, you must find that the Defendant's act or the act of an accomplice or co-conspirator is the legal cause of death of [the victim], and thereafter you must determine if the killing was intentional.

*Id.* at 962 (alteration in original). In stark contrast to the *Huffman* instruction, in the case *sub judice* the instructions of the trial court stated:

[Y]ou may find the defendant guilty of the crime without finding that he personally and individually performed the acts or engaged in the conduct required for the commission of that crime, or instances which are not here applicable so that I won't get into them.

As stated, a defendant is guilty of the crime if he is an accomplice of another person who commits that crime. He is an accomplice if, with the intent of promoting or facilitating the commission of a crime, he solicits, commands, encourages, or requests the other person to commit it, or aids, agrees to aid, or attempts to aid the other person in planning or committing it.

What is meant by the words in this definition of accomplice "with the intent of promoting or facilitating the commission of a crime"?

This means that the intent or mental state of the defendant at the time he acted was to advance a criminal end or purpose.

Bear in mind that mere physical presence at a crime scene without more does not make him an accomplice. Rather, the facts and circumstances must be closely examined in order to establish that the defendant through his words, acts, deeds or conduct became a partner in the criminal intent of the actual active perpetrator, and encourages or assists him or engages in comparable overt behavior.

For a person to be an accomplice in the commission of a crime, he must be an active partner in the intent to commit it. That is, he must have prior knowledge of the criminal intent or criminal purpose of his accomplice or accomplices, and then counsel or participate in such a purpose.

(N.T., 5/18/83, at 5992–94). Unlike the jury instructions in *Huffman*, here the trial court explained that a defendant must promote the occurrence of the crime. The trial court detailed that the defendant must have the mental state of advancing a criminal end, and further explained what acts were insufficient. The legally correct and well-explained instructions in the instant case make clear that the trial court did not err in giving these instructions. The jury was sufficiently aware of what was necessary in order to find Jones guilty of criminal conspiracy. As such, counsel cannot be ineffective for failing to challenge legally proper instructions. *See Hall, supra.*

## ISSUE 2—STATEMENTS OF NASSIA FORD

 Next, Jones asserts that the statements Nassia Ford ("Ford") made at the crime scene that identified Jones as one of the shooters (N.T., 5/3/83, at 4362–63) were inadmissible hearsay. He claims that the trial court erred in admitting them because Ford's written declaration to Detective Douglas Culbreth ("Detective Culbreth") taken at the hospital about forty minutes after the shooting arguably contradicted them. Jones argues that Ford's statements, made moments after the shooting, could have been colored by outside influences and "do[ ] not contain the hallmarks of reliability that mark a contemporaneous excited utterance." (Brief of Jones at 21).

 A trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and will not be reversed absent a clear abuse of that discretion. *Commonwealth v. Cargo*, 498 Pa. 5, 444 A.2d 639, 644 (1982). Pennsylvania Rule of Evidence 803(2) provides that an excited utterance is a statement that is not excluded by the hearsay rule, even if the declarant is available to testify. A statement meets the requirement of this hearsay exception if it is:

A spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704, 712 (1992) (internal quotation marks omitted). There is no clearly defined limit as to the time sequence required for a statement to qualify as an excited utterance; instead, a fact-specific inquiry is made for each case to determine whether the utterance and the event are in close enough proximity. *See Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75, 95–96 (2004).

In the case before us, seven minutes and forty seconds after being shot in the leg, and in a hysterical state, Ford told his uncle, Timothy Ford, that Jones had shot him and that "Damien Jones" and "Buttons" had been shooting. (N.T., 5/3/83, at 4359–63). Thirty-five to forty minutes after the shooting, Detective Lamont Anderson ("Detective Anderson") arrived at the hospital and spoke with Ford. (N.T., 3/22/83, at 494–95). Detective Anderson asked Ford who shot him, and Ford responded that "Coop and Damon was [sic] with him." (N.T., 3/25/83, at 976). At trial, Jones called Detective Culbreth who testified that, when asked what happened, Ford reported "they shot me" and that "it was Coop and a lot of other guys." (N.T., 4/6/83, at 1766–67).

We find no error on the part of the trial court. Less than ten minutes after being shot, Ford identified Jones as one of the shooters. He did so while bleeding from his gunshot wound and awaiting transport to the hospital. Approximately thirty minutes later, Ford confirmed this fact when responding to questions posed by the police officers, by stating that Jones was one of the shooters.

This Court often has held similar statements admissible under the excited utterance exception to the prohibition on hearsay statements. *See, e.g., Commonwealth v. Douglas,* 558 Pa. 412, 737 A.2d 1188, 1194–95 (1999) (upholding the admission of the victim's declaration to a police officer as an excited utterance because he identified the shooter while being transported to the hospital eleven minutes after the shooting); *Commonwealth v. Penn,* 497 Pa. 232, 439 A.2d 1154, 1159(Pa.), *cert. denied, Penn v. Pennsylvania,* 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982). We conclude, therefore, that the statements of Ford were admitted properly pursuant to the excited utterance exception to the hearsay rule. Because Jones cannot establish that his underlying claim has merit, he has failed to argue successfully that counsel was ineffective with regard to this claim.

Further, Jones argues that Ford's statement to his uncle cannot be admitted pursuant to the excited utterance exception to the hearsay rule because the statements were made in

response to questioning, rather than being purely spontaneous. (Brief of Jones at 21). This argument fails. The jurisprudence of this Commonwealth makes it clear that a statement, which otherwise qualifies as an excited utterance, is not precluded from falling within the excited utterance exception to the hearsay rule when made in response to questioning. *See Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576, 580 (1973); *Commonwealth v. Edwards*, 431 Pa. 44, 244 A.2d 683, 685 (1968). Accordingly, in the instant matter, the fact that Ford identified Jones and Buttons after his uncle asked who shot him does not disqualify his statement from the excited utterance exception to the hearsay rule.

Relying on *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (holding that out-of-court statements that are testimonial are barred unless the witness is unavailable and the defendant had prior opportunity to cross-examine), Jones contends that the admission of Ford's out-of-court statement violated the confrontation clause of the Sixth Amendment to the United States Constitution.[15] Contrary to Jones' contention, *Crawford* did not abolish the excited utterance exception to the hearsay rule when the declarant is unavailable. *Id.* at 61, 124 S.Ct. 1354 (declining to overrule *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), which held, *inter alia*, that the admission at trial of a spontaneous declaration by an unavailable declarant did not violate the Confrontation Clause).

Thus, the above alleged errors of the trial court in admitting the out-of-court statements of Ford lack merit. Having failed to establish the underlying merit of these issues, Jones' claim of ineffective assistance of counsel for failing to challenge the statements of Ford must also fail. *See Hall, supra.*

 Finally, Jones argues that the trial court's admission of Ford's statements without first holding a competency hearing "violated state law regarding witness competency." (Brief of Jones at 21). To begin with, it is not altogether clear that a

15. "In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him...."

competency hearing was required. *See Commonwealth v. Pronkoskie,* 477 Pa. 132, 383 A.2d 858, 861 n. 5 (1978) (suggesting, albeit in *dicta,* that "an otherwise properly qualifying excited utterance is not rendered inadmissible by a ruling that the declarant is incompetent to testify"); *Penn, supra* (upholding an out-of-court excited utterance of a child eyewitness without discussing the relevance of his age). Even assuming a hearing was required, however, Jones has failed to show that the admission of the statement of this one eyewitness prejudiced him. Given that, at trial, the Commonwealth produced testimony from at least six eyewitnesses who saw Jones commit the crime, Jones' failure to show prejudice is not surprising.

### ISSUE 3—PROSECUTORIAL MISCONDUCT

Jones next presents several claims of prosecutorial misconduct, none of which is properly before this Court. First, he alleges that the prosecutor committed misconduct when he smeared defendant by implied associations during cross-examination of a witness. (Brief of Jones at 28). However, Jones has waived review of this claim because he failed to raise it in his PCRA Petition in violation of *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998).

Next, Jones brings claims that are waived because they were previously litigated that the prosecutor committed misconduct: (1) in the form of the questions he asked during trial (Brief of Jones at 24–30), *see Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931, 940 (1992); (2) by improperly cross-examining two alibi witnesses (Brief of Jones at 28–30), *see Jones,* 610 A.2d at 941; (3) by introducing a tape of television news coverage of the crime (Brief of Jones at 30–31), *see Jones,* 610 A.2d at 942; (4) by improperly rebutting his alibi defense (Brief of Jones at 31), *see Jones,* 610 A.2d at 942–43; and (5) during his closing argument (Brief of Jones at 32–39), *see Jones,* 610 A.2d at 943–44.

Additionally, Jones adds a one-sentence allegation that the prosecutor committed misconduct by attempting to introduce inadmissible evidence. (Brief of Jones 30). Jones fails to

offer any context for this assertion and provides no legal support for it. He has therefore failed to establish the merits of this claim. Absent such a showing, he has not demonstrated ineffective assistance of counsel. *See Hall, supra.*

Finally, Jones beseeches this Court to view the prosecutor as a "career offender," citing several cases where he asserts that the prosecutor's performance amounted to misconduct. (Brief of Jones at 41). This attack concerning how the prosecutor conducted the other cases is irrelevant and not cognizable. No further review is warranted.

## ISSUE 5—MISSING TRANSCRIPTS

Jones has never had transcripts of the *voir dire* proceedings in this matter. He asserts that the absence of these transcripts: (1) deprived him of his right to a direct appeal; (2) constituted a constructive denial of counsel; and (3) amounted to ineffective assistance of counsel. Because his claim of a deprivation of a direct appeal cannot be recast as a claim of ineffective assistance of counsel, as is necessary for our review, it fails on that basis alone. We further note that, as a practical matter, Jones' lack of *voir dire* transcripts could not have denied him direct review, as this Court provided such review in 1992. *See Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931 (1992).

Jones' second claim lacks substantive merit, as well. He presents two separate theories to support his argument. The first is that he was denied access to the transcripts and therefore was effectively denied counsel. Noting that state and federal law afford an indigent defendant an absolute right to the production of the record in his case (Brief of Jones at 56), Jones argues that he is entitled to a new trial. To support this position he cites *Commonwealth v. Goldsmith,* 452 Pa. 22, 304 A.2d 478 (1973), which stated that "meaningful appellate review is impossible absent a full transcript.... If a meaningful appellate review is impossible, for whatever reason, and the appellant is not at fault, he is entitled to a new trial." *Id.* at 480 (emphasis omitted). Jones notes that federal law provides similar protections. *See Hardy v. United*

*States,* 375 U.S. 277, 282, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964). He further relates that the denial of transcripts violated his due process right to access to courts. *See Bounds v. Smith,* 430 U.S. 817, 822–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (noting that it is established beyond a doubt that prisoners have a constitutional right of access to the courts, and that such access must be meaningful; "meaningful access" in this regard includes not having the availability of appeal foreclosed because of the costs associated therewith).

Although Jones makes a cogent argument that where an appellant has been denied access to his transcripts constitutional protections come into play, he fails to demonstrate sufficiently that these protections should apply to this case. In making this claim to the lower courts, Jones presented no evidence that he requested the transcription of the *voir dire* proceedings. In fact, the trial court explained that the tapes from the *voir dire* never were transcribed because none of the three attorneys for the three co-defendants requested transcription. *Commonwealth v. Jones,* Nos. 712–14, 716, 718, 721, 723, 725, 727, 730 E.D. 1998, at 15–16 (C.P. Pa. Philadelphia Nov. 21, 1989) (hereinafter "trial ct. Op.").

Pennsylvania Rule of Appellate Procedure 1911(a) states that "[t]he appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 5000.1 *et seq.* of the Pennsylvania Rules of Judicial Administration (court reporters)." *See also* Pa.R.J.A. 5000.2(g) ("The *voir dire* examination of jurors, opening or closing statements of counsel . . . shall be recorded, but not transcribed, unless otherwise ordered."); *Commonwealth v. Stokes,* 576 Pa. 299, 839 A.2d 226, 229–30 (2003) (holding that it is the appellant's responsibility to secure a complete record for review). Jones cannot blame the trial court or the Commonwealth for his own failure to obtain transcripts of *voir dire* as they were not responsible for providing him with such transcripts. Only where a defendant establishes that such a request was made and denied, which is not the case here, might an argument like the one Jones professes here succeed.

As currently presented, his theory that the courts or the Commonwealth "constructively denied" him counsel is without merit.

Jones' second theory supporting his constructive denial argument is based upon *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Here, the United States Supreme Court recognized an exception to the general requirement that an appellant prove prejudice from counsel's substandard performance before he can receive relief for ineffective assistance of counsel. The Court ruled that prejudice is presumed when a defendant is denied counsel totally or at a critical stage of the proceedings. *Id.* at 659, 104 S.Ct. 2039. Jones now avers that because his counsel was unable to "even begin to represent" him given the absence of the transcripts, a violation of *Cronic* occurred. (Brief of Jones at 60). This claim is entirely baseless. Nothing in the facts of this matter demonstrates that Jones was denied counsel completely or at a critical stage of the proceedings. That counsel chose to forego requesting the transcripts of *voir dire* does not in any way indicate that the courts or the Commonwealth compelled such an outcome. We conclude that *Cronic* is inapplicable to the instant matter because the decision not to request the *voir dire* transcripts was made by counsel and was not a decision by the court that would have prevented counsel from providing effective representation to Jones.

■ Jones' argument, that prior counsel were ineffective for failing to secure these transcripts, is not persuasive. As noted *supra*, in order to present a successful ineffective assistance claim, a defendant must demonstrate that the underlying issue has arguable merit, that counsel's performance lacked a reasonable basis, and that the defendant suffered prejudice because of counsel's failure. *Todaro, supra.* Jones is unable to meet this standard.

■ Jones contends that his underlying claim has merit because, if he had access to the transcripts, he would have been able to bring a successful *Witherspoon* claim.[16] In

---

**16.** Jones did bring a *Witherspoon* claim in his post-verdict motion; however, the claim failed. *See* trial ct. Op. at 15.

*Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court held that a sentence of death cannot be carried out if the jury that imposed it was chosen by excluding venirepersons for cause simply because they voiced general objections to the death penalty.[17] Jones now cites the testimony and affidavit of venireperson Brenda E. Pollard ("Pollard") as evidence that she was excluded for having such generalized objections. The testimony that Pollard gave, however, does not meet the *Witherspoon* standard. She testified that she was **unable** to impose the death penalty. (N.T., 12/19/01, at 9–11 (emphasis added)).

This evidence supporting Jones' *Witherspoon* argument is insufficient to meet the first prong of the *Todaro* ineffective assistance of counsel standard. Pollard's testimony, rather than establishing a *Witherspoon* violation, does the opposite. It demonstrates that she was excluded properly from the jury. "It is well settled that a prospective juror may be excluded for cause when his views on capital punishment are such as would prevent or substantially impair the perform-

17. As the *Witherspoon* court explained:

[I]t cannot be assumed that a juror who describes himself as having conscientious or religious scruples against the infliction of the death penalty or against its infliction in a proper case thereby affirmed that he could never vote in favor of it or that he would not consider doing so in the case before him. Obviously many jurors could, notwithstanding their conscientious scruples (against capital punishment), return ... (a) verdict (of death) and ... make their scruples subservient to their duty as jurors. Yet such jurors have frequently been deemed unfit to serve in a capital case.

The critical question, of course, is not how the phrases employed in this area have been construed by courts and commentators. What matters is how they might be understood-or misunderstood-by prospective jurors. Any layman ... (might) say he has scruples if he is somewhat unhappy about death sentences.... (Thus) a general question as to the presence of ... reservations (or scruples) is far from the inquiry which separates those who would never vote for the ultimate penalty from those who would reserve it for the direct cases. Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position.

*Witherspoon,* 391 U.S. at 515 n. 9, 88 S.Ct. 1770 (internal citations and quotation marks omitted).

ance of his duties as a juror in accordance with his instructions and his oath." *Commonwealth v. Speight,* 578 Pa. 520, 854 A.2d 450, 459 (2004) (internal quotation marks omitted). Pollard admitted that she was unable to impose death. Thus, she was not qualified to serve on the jury, and her dismissal was appropriate. Counsel cannot be deemed ineffective for failing to challenge a proper dismissal. *See Hall, supra.*

## ISSUE 8—TRIAL COURT CRITICISM OF CO–DEFENSE COUNSEL

■■■ Jones avers that the trial court repeatedly and improperly criticized co-defense counsel, both in front of and away from the jury. Arguing that many of co-defense counsel's actions were improper, Jones believes that these condemnations prejudiced the jury against him, violating his right to a fair trial as secured by the federal and Pennsylvania Constitutions. Jones references nearly seventy instances of trial court misconduct. (Brief of Jones at 69–73). However, Jones focuses on one specific event as the driving force of his argument. He notes that Juror Number One, Laura McEwen ("McEwen"), was frustrated with the pace of the trial and believed that the defense (referring generally to all three co-defendants) was partly responsible for the delay. (Brief of Jones at 73–74 (citing N.T., 5/11/83, at 5215–16)). Jones asserts that this comment is proof that, notwithstanding the trial court's instruction that criticism of one defendant's counsel should not be taken as an admonition of all of the defense counsel, the jury blamed all defense counsel for the length of the trial and that he was prejudiced thereby.

■■■ A judge's remarks to counsel do not warrant reversal unless the remarks so prejudice the jurors against the defendant that "it may reasonably be said [that the remarks] deprived the defendant of a fair and impartial trial." *Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292, 1300 (1977) (stating that a judge's critical remarks to defense counsel did not deprive appellant of a fair and impartial trial because the remarks were directed to counsel, not appellant).

We hold that Jones cannot establish the underlying merit of this claim. First, the comment was not directed at Jones; it was not even directed at his counsel. Thus, pursuant to our holding in *England,* no prejudice resulted. Further, McEwen did not state that she would be unable to perform her duties as a juror because of the frustration she felt towards counsel. Without such a demonstration, we fail to see that Jones was prejudiced by this particular comment. Where Jones suffered no harm, counsel cannot be ineffective for failing to bring a claim. Therefore, Jones cannot successfully establish any ineffective assistance of counsel with respect to this issue. *See Hall, supra.*

We deem Jones' seventy-plus claims waived because he failed to: (1) properly develop these claims by explaining the circumstances and context of each trial court statement; (2) identify whether the comments were made in front of the jury; or (3) explain how each statement prejudiced him.

## ISSUE 10—THE TRIAL COURT'S REASONABLE DOUBT INSTRUCTION

 Noting that "[ ] due process prohibits the conviction of any person 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged,'" Jones submits that the jury instruction in the instant case relieved the Commonwealth of the full measure of its burden. (Brief of Jones at 78 (quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970))). He specifically claims that the reasonable doubt charge deprived him of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution.

Pennsylvania's Standard Jury Instruction for reasonable doubt provides in pertinent part that: "[a] reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his own affairs." Pa. Suggested Standard Criminal Jury Instruction 7.01(3) (1979). In the instant case, the trial court instructed the jury as follows: "A reasonable doubt is such a

doubt as would cause a reasonably prudent, careful, and sensible person to pause, hesitate, and restrain himself or herself before acting upon a matter of highest importance in his or her own affairs." (N.T., 5/17/83, at 5885). Jones argues that the addition of the words "pause" and "restrain" unconstitutionally reduced the prosecution's burden of proof as it improperly elevated the level of doubt required before a juror would find reasonable doubt. (Brief of Jones at 79).

Jones' claim is entirely baseless. This Court has "explicitly approved of instructions containing the word 'restrain' for nearly five decades." *Commonwealth v. Marshall*, 570 Pa. 545, 810 A.2d 1211, 1225 (2002), *cert. denied, Marshall v. Pennsylvania*, 540 U.S. 833, 124 S.Ct. 81, 157 L.Ed.2d 61 (2003) (collecting cases); *see also Commonwealth v. Fisher*, 572 Pa. 105, 813 A.2d 761, 769–70 (2002) (upholding the trial court's instructions that defined reasonable doubt as both "a doubt that would cause a reasonably careful and sensible person to pause and hesitate before acting upon a matter of importance in his or her own affairs" as well as "the kind of doubt that would restrain a reasonable man from acting in a matter of importance to himself"); *Commonwealth v. Hawkins*, 567 Pa. 310, 787 A.2d 292, 301–02 (2001) (upholding the trial court's instructions where it defined reasonable doubt using the terms "hesitate" and "restrain"); *Commonwealth v. Rodney Jones*, 529 Pa. 149, 602 A.2d 820, 822 (1992) (approving of language in trial court's instructions that defined reasonable doubt as "doubt of such substance that if it occurs [sic] in a matter of importance in your own affairs, it would restrain you from acting"). Clearly, the trial court's instructions on reasonable doubt were entirely proper, and counsel cannot be deemed ineffective for failing to raise such a baseless claim. *See Hall, supra.*

*ISSUE 11—TRIAL COURT'S INSTRUCTION ON FIRST-DEGREE MURDER AND AGGRAVATED ASSAULT*

In a brief, one-paragraph argument, Jones argues that, pursuant to *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), he was unconstitutionally convicted of

first-degree murder and aggravated assault. *Winship* states that a defendant cannot be convicted of a crime unless every element of the offense is charged and the jury finds the defendant guilty of each element of the charge beyond a reasonable doubt. *Id.* at 364, 90 S.Ct. 1068. Jones asserts that the trial court failed to instruct the jury on transferred intent, *see* 18 Pa.C.S. § 303(b), and thus ran afoul of the requirement of *Winship*.

This claim utterly fails. The trial court's instruction on the doctrine of transferred intent stated:

> The principle of transferred intent, really, simply stated, applies to a situation in which a mistake of fact may be made, under the facts and circumstances.
>
> \* \* \*
>
> Where one kills the wrong person or inflicts serious bodily harm upon the wrong person by shots which were intended to seriously harm or kill another, third person, is guilty of criminal homicide and the same degree of criminal offense with respect to inflicting serious bodily injury as if the shots had killed or seriously harmed his intended victim.

(*See* N.T., 5/18/83, at 6005–07). These instructions were proper. *See Commonwealth v. Thompson*, 559 Pa. 229, 739 A.2d 1023, 1029–30 (1999) (approving of the instructions, which advised that "if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime."). Where the trial court gave proper instructions to the jury it cannot be in violation of *Winship*. As the underlying claim is meritless, Jones cannot succeed on his associated claim of ineffective assistance of counsel. *See Hall, supra.*

## ISSUE 14—THE CRIMINAL INFORMATION OMITTED ESSENTIAL ELEMENTS OF THE OFFENSE

Pursuant to Pennsylvania law, first-degree murder requires the specific intent to kill the victim. 18 Pa.C.S. § 2502. This specific intent may be transferred to an unintended victim. 18 Pa.C.S. § 303(b). Jones states that because the Commonwealth proceeded under the theory of

transferred intent, it was required to show that Jones specifically intended to kill Sylvester Williams in order to have that intent transferred to eventual victims. He avers that because this element of the crime was not set forth in the criminal information against him, the information violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution.

██ "Indictments must be read in a common-sense manner, and are not to be construed in an overly technical sense." *Commonwealth v. Pope*, 455 Pa. 384, 317 A.2d 887, 890 (1974). "At an earlier stage of legal development, indictments were strictly and technically construed, and the slightest imprecision in wording was often considered incurable error. Today, however, such arguments are unpersuasive." *Id.* (internal citations omitted). This Court has upheld criminal indictments possessing a flaw and found them to be constitutional because they put the defendant on sufficient notice of the charge against him or her. *See, e.g., Commonwealth v. Kelly*, 487 Pa. 174, 409 A.2d 21 (1979) (upholding indictment that charged defendant with possession of heroin when the controlled substance in fact was methamphetamine because defendant was well advised of the nature of the offense charged).

██ Jones admits that the challenged criminal information in this matter separately charged that Jones did "feloniously, willfully, and of his malice aforethought kill and murder" Maurice Jones and Reginald Hines, pursuant to 18 Pa.C.S. § 2502. (*See* Brief of Jones at 87). Both criminal informations charged Jones with violating the statutory section for first-degree murder. A criminal information is not constitutionally infirm if it notified the defendant of the crime with which he is charged. We believe that when properly read in a common sense manner, the indictments in this case gave Jones adequate notice of the charges against him, regardless of the fact that the criminal information did not specify the specific intent element as to Williams.

 Moreover, this Court does not view the alleged unconstitutional variance as material or prejudicial to Jones. It is well settled that a purported variance will not be deemed fatal "unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right." *Pope*, 317 A.2d at 890 (footnotes omitted). In the case *sub judice*, Jones knew that he was charged with killing Maurice Jones and Reginald Hines. He further knew that the charge was for an intentional killing pursuant to 18 Pa.C.S. § 2502. The variance in the charge did not hinder his ability to prepare a defense or impair a substantial right. Jones' state and federal constitutional rights were not violated by the form of the criminal information in this instance. Counsel cannot be deemed ineffective for failing to bring an issue that has no merit. *See Hall, supra.* No relief is due.

### ISSUE 15—CUMULATIVE ERROR

Jones avers that the cumulative effect of the errors alleged herein denied him a fair trial. We have held that "no number of failed claims may collectively attain merit if they could not do so individually." *Commonwealth v. Craig Williams*, 532 Pa. 265, 615 A.2d 716, 722 (1992) (emphasis omitted). Because we have determined that there were no errors warranting relief, Jones' allegation of cumulative error fails.

### ISSUE 16—EVIDENTIARY HEARING

 Although the trial court granted an evidentiary hearing with regard to "several specific claims" of Jones, he now avers that the trial court erred in denying an evidentiary hearing as to his remaining claims. (Brief of Jones at 95). Pennsylvania Rule of Criminal Procedure 909(B) requires a court to hold an evidentiary hearing on all genuine issues of material fact raised in a capital PCRA petition. The foregoing review of Jones' claims sufficiently establishes that no material issues of fact remain. Further, aside from making a blanket statement that his "other claims" warrant a hearing, Jones

fails to identify or argue with specificity what issues of fact remain in contention. Thus, this claim too does not succeed.

### ISSUE 17—DISCOVERY

Jones notes that he has repeatedly "requested discovery in his PCRA petition and his renewed motion for discovery." (Brief of Jones at 95). He argues that the claims raised herein would be buttressed by material subject to discovery pursuant to Pennsylvania Rule of Criminal Procedure 902. Rule 902(E)(2) states that "[o]n the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause." Pa.R.Crim.P. 902(E)(2). Here, Jones has failed to offer any reason, let alone one demonstrating "good cause," why further discovery in this matter is warranted. Thus, this claim is also unsuccessful.

### CROSS–APPEAL OF THE COMMONWEALTH

We now turn to the cross-appeal filed by the Commonwealth. It claims that the PCRA court erred where it: (1) granted an evidentiary hearing; and (2) found that trial counsel was ineffective for failing to investigate available information that "would have produced evidence to support the [following] statutory mitigating circumstances:" (a) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, 42 Pa.C.S. § 9711(e)(3); and (b) other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense, 42 Pa.C.S. § 9711(e)(8). *Commonwealth v. Jones*, No. 0172 E.D. 2003, at 25 (C.P. Pa. Philadelphia July 31, 2003) (hereinafter "PCRA ct. Op.").

### ISSUE 1—EVIDENTIARY HEARING

The Commonwealth argues that, pursuant to 42 Pa. C.S. § 9543(b), the PCRA court should have dismissed Jones' Petition outright due to the prejudice to the Commonwealth resulting from the passage of time. Specifically, the Common-

wealth avers that it was prejudiced in its ability "to respond to [Jones'] allegation that eighteen years ago, trial counsel was ineffective for failing to further investigate mitigation evidence." (Brief of Commonwealth at 20).

Section 9543(b) states, in pertinent part, as follows:

Even if the petitioner has met the requirements of subsection (a), the petition shall be dismissed if it appears at any time that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner. A petition may be dismissed due to delay in the filing by the petitioner only after a hearing upon a motion to dismiss.

42 Pa.C.S. § 9543(b). Thus, by its very terms, Section 9543(b) requires that: (1) a claim of prejudice must arise from a petitioner's undue delay in commencing post-conviction litigation; (2) the claim be raised in a motion to dismiss; and (3) the lower court must conduct an evidentiary hearing on this defense.

In the instant matter, the Commonwealth failed to raise this defense in either its Motion to Dismiss or its Supplemental Motion to Dismiss. As expected, where no request is made, the trial court did not consider this defense and had no opportunity to address it. Accordingly, this claim is waived.

## ISSUE 2—MITIGATING FACTORS

 Our standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Morales,* 549 Pa. 400, 701 A.2d 516, 520 (1997). "While [we] will always defer to [a PCRA] court's factual determinations where supported by the record, the ultimate question of whether facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Saranchak,* 581 Pa. 490, 866 A.2d 292, 304 n. 14 (2005).

The PCRA court found that there was substantial information available at the time of trial that trial counsel should have

investigated to support the Section 9711(e)(3) mitigator. It noted that during the PCRA hearing Jones presented evidence of his inability to appreciate the criminality of his act. Among the documents submitted into evidence were his Juvenile Court, school, and incarceration records that detailed a history of mood swings, auditory and visual hallucinations, and difficulty staying in touch with reality. PCRA ct. Op. at 22–23. In addition to those documents, several experts testified at the hearing. After meeting with Jones, Julie Kessel, M.D., a forensic psychiatrist ("Dr. Kessel"), who was testifying on his behalf, stated that Jones suffers from "schizophrenic disorder paranoid subtype." [18] *Id.* at 23. He also exhibited delusional experiences. The records reviewed by Dr. Kessel showed that Jones began to manifest symptoms of the disease at the age of thirteen and that he was suffering from this disease at the time of the shooting. *Id.* Dr. Kessel concluded that as a result of his tendency "to distort reality, his impairment in interpersonal relatedness and his suspiciousness, [Jones'] ability to appreciate the criminality of his conduct and to conform his conduct to the requirements of law was substantially impaired at the time of the offense." *Id.*

Dr. Delores Sarno–Kristofis ("Dr. Sarno–Kristofis"), a clinical and forensic psychologist who was also called by Jones, testified at the hearing after she reviewed the same materials as Dr. Kessel, interviewed Jones and administered psychological tests. She stated that Jones presented "classic paranoid-schizophrenic delusions[,]" (N.T., 7/24/01, at 24–25), and concluded that Jones suffers from schizophrenia and did at the time of the offense. PCRA ct. Op. at 23–24. She concluded that "as a result of his illness, capacity to appreciate the criminality of his acts was substantially impaired." *Id.*

Jones' trial counsel, Richard E. Johnson, Esq. ("Johnson"), called no witnesses and presented no evidence at Jones' penalty hearing.[19] He testified that he did not recall review-

18. This disease manifests itself in a tendency to distort reality, impair interpersonal relationships, and suspiciousness.

19. This refers to what Johnson failed to do during Jones' sentencing immediately after his trial. Wiseman, Jones' current counsel, called the

ing the records that Drs. Kessel and Sarno–Kristofis evaluated. Johnson stated that, if he had read the pre-sentence report, he would have had Jones evaluated. (N.T., 7/23/01, at 177). As Jones aptly notes, although Johnson stated that he could not remember if he had reviewed the pre-sentence report, presumably he never did, because if he had, by his own admission, he would have had Jones evaluated. (Reply Brief of Jones at 15). Nor did Johnson recall when he began preparing for the penalty phase of Jones' trial. He did remember declining to obtain psychological evaluations of Jones because his interaction with Jones during trial led him to believe that Jones did not need one. PCRA ct. Op. at 24.

The Commonwealth presented Dr. John O'Brien ("Dr. O'Brien"), who inspected the same documents as the other witnesses and spoke with Jones.[20] He concluded that Jones did not suffer from schizophrenia, even in remission. On cross-examination, Dr. O'Brien admitted that the schizoid personality can be a premorbid antecedent to a delusional or schizophrenic disorder. *Id.* When asked on cross-examination whether, on the basis of the psychological examinations available at the time of Jones' trial from previous court evaluations, he would have recommended another evaluation for possible use as mitigation, Dr. O'Brien responded "yes." *Id.* at 24–25.

In addition to the evidence and testimony detailed *supra*, Jones also presented the following evidence: the testimony of his sister and his cousin, as well as affidavits from his mother, another sister, his maternal aunt, his brother, and two family friends. PCRA ct. Op. at 22. This evidence revealed that: (1) Jones was one of nine children born to seven different fathers; (2) there was no father figure in the home, and the men who did occasionally live in the home abused both the children and their mother; (3) his mother was an alcoholic who suffered from mental illness, abused the children, and offered them no

psychiatrist and the psychologist to testify at the PCRA hearing, which occurred over a decade later.

**20.** The PCRA court Opinion does not specify whether Dr. O'Brien is a forensic psychiatrist or a psychologist.

affection or support; (4) the family lived in a housing project that experienced rampant drug dealings and crime; (5) Jones was left to fend for himself from a very early age, rarely attended school, and began to show signs of mental illness at the age of nine; and (6) as he grew, Jones began to experience rapid mood swings, auditory and visual hallucinations, and difficulty staying in touch with reality. *Id.* at 22–23.

On the basis of the foregoing, the PCRA court found that there was substantial information available at the time of trial that trial counsel should have investigated and that would have supported the statutory mitigating circumstances of Jones' inability to appreciate the criminality of his conduct, *see* 42 Pa.C.S. § 9711(e)(3), and other evidence of mitigation concerning Jones' character and record and the circumstances of his offense, *see* 42 Pa.C.S. § 9711(e)(8). *Id.* at 25.

The Commonwealth attempts to establish error on the part of the PCRA court by arguing that Jones rested his allegation of ineffective assistance of counsel "upon numerous layers of speculation." (Brief of Commonwealth at 24). The Commonwealth avers that Jones claims that trial counsel should have conducted a deeper investigation, which would have revealed a mental health problem which would have led counsel to conclude that Jones should receive a psychological examination which would have led Jones to reveal during that examination that he suffered from schizophrenia and did so at the time of the crime. According to the Commonwealth's theory, this, in turn, would have by necessity provided the basis for the Section 9711(e)(3) mitigator. The Commonwealth ultimately rests its argument on the weakness of this series of assumptions and the fact that Jones never proved that such indicators of mental illness existed. *Id.*

What the Commonwealth fails to prove, however, is that the PCRA court erred in reaching its determination. The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference. We will not disturb the findings of the PCRA court if they are supported by the record, even where

the record could support a contrary holding. *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468, 476 (1977). This Court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. *See, e.g., Commonwealth v. Meadius*, 582 Pa. 174, 870 A.2d 802, 805 (2005).

To succeed with a claim of ineffective assistance of counsel, a defendant must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). We have interpreted this standard to require a petitioner to prove that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused appellant prejudice. *Commonwealth v. Todaro*, 549 Pa. 545, 701 A.2d 1343, 1346 (1997).

In the instant case, the PCRA court found that the underlying claim of trial counsel's ineffectiveness was of arguable merit. We agree. Numerous prior cases of this Court, as well as the United States Supreme Court, detail the obligations of defense counsel to develop mitigating evidence in a capital sentencing proceeding. Where counsel fails to investigate reasonably mitigating evidence of childhood abuse, family dysfunction and neglect, as well as mental health impairments, deficient performance exists. *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 737 n. 21 (2000) ("Evidence of a difficult family history and emotional disturbance is typically introduced by defendants in mitigation.") (citing *Eddings v. Oklahoma*, 455 U.S. 104, 115–16, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)). In the instant matter, Johnson had an obligation to investigate potential mitigating evidence. He failed to do so. As the evidence presented at the PCRA hearing demonstrates, there was a wealth of material available at the time of sentencing that could have led to persuasive evidence of mitigation. Therefore, we agree with

the PCRA court that Jones has succeeded in proving that trial counsel was ineffective.

Further, we can discern no strategy on the part of Johnson for failing to conduct a review of available records, interviews of available family members, and subsequent investigation stemming from such research. In fact, Johnson offered no strategic reason for failing to do so, stating instead that he did not see any need. Finally, the PCRA court's conclusion, that there was a substantial likelihood that the outcome of the penalty hearing would have been different with the addition of the Section 9711(e)(3) and (e)(8) mitigators, is without error.

> To show prejudice in the penalty phase of a death penalty case, an appellant must show the reasonable probability that, absent trial counsel's failure to present mitigating evidence, he would have been able to prove at least one mitigating circumstance by a preponderance of the evidence and that at least one jury member would have concluded that the mitigating circumstance(s) outweighed the aggravating circumstance(s).

*Commonwealth v. Ford*, 570 Pa. 378, 809 A.2d 325, 332 (2002) (Opinion Announcing the Judgment of the Court). Such prejudice existed in this case.

Therefore, we agree with the PCRA court that Jones has established the ineffectiveness of trial counsel. Our inquiry, however, does not end there, for Jones has merely satisfied the arguable merit prong of appellate counsel's ineffectiveness. We must still proceed to the remaining two prongs of the *Pierce* test as it relates to the ineffectiveness of appellate counsel. *See Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651, 656 (2003) (citing *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014, 1023–24 (2003)).

As we previously stated, Jones failed to develop each prong of the *Pierce* test as to the deficient representation of appellate counsel. Jones' failure in this regard, however, is not fatal to his claim. As we noted in *McGill*, in light of the lack of clear guidance to petitioners who filed before we decided

that case, a remand to the PCRA court may be appropriate "where the petitioner has failed to preserve, by pleading and/or presenting, a layered ineffectiveness claim in a manner sufficient to warrant merits review." *McGill*, 832 A.2d at 1024; *see also Rush*, 838 A.2d at 657 (noting that appellant's failure to present argument as to appellate counsel ineffectiveness was "specifically the type of presentation defect that the remand provision in *McGill* was created to address").

In *McGill* itself, because the PCRA court properly determined that trial counsel was not ineffective, we declined to remand to allow McGill to properly plead and argue his claim of layered ineffectiveness. *Id.* at 1026. In several cases subsequent to *McGill*, we noted the remand option but explained that it was inapplicable in light of the appellant's failure to prove the ineffectiveness of trial counsel. *See, e.g., Commonwealth v. Brown*, 582 Pa. 461, 872 A.2d 1139, 1146–47 (2005); *Commonwealth v. Cox*, 581 Pa. 107, 863 A.2d 536 (2004); *Commonwealth v. Terrance Williams*, 581 Pa. 57, 863 A.2d 505, 513–14 (2004); *Commonwealth v. Lopez*, 578 Pa. 545, 854 A.2d 465 (2004).

In contrast, Jones has succeeded in establishing that trial counsel rendered him ineffective assistance. Therefore, pursuant to *McGill*, we remand the matter to the PCRA court to allow Jones the opportunity to develop the record and present argument with respect to: (1) whether appellate counsel had a reasonable basis for failing to argue that trial counsel was ineffective for failing to investigate and present evidence of the Section 9711(e)(3) and (e)(8) mitigators;[21] and (2) whether appellate counsel's failure in this regard prejudiced Jones.

---

**21.** I note here that the two ineffectiveness claims based on the failure to present mitigating evidence that were raised on direct appeal are distinct from the claim that Jones presently raises. *See Commonwealth v. Jones*, 530 Pa. 591, 610 A.2d 931, 947 (1992) (discussing a claim based on the "failure to present mitigating evidence as to appellant's age" and another based on the failure to present testimony as to Jones' "character as a youth") (internal quotation marks omitted). The instant claim is based on trial counsel's failure to investigate and present evidence to support the following two mitigating circumstances: (1) Section 9711(e)(3), substantial impairment of Jones' capacity to appreciate the criminality of his conduct or to conform his conduct to the

 

## CONCLUSION

The Order of the PCRA court is vacated to the extent that it granted Jones relief in the form of a new penalty hearing and affirmed in all other respects. This case is remanded to the PCRA court to allow Jones to plead and argue his claim of layered ineffectiveness properly.

Justice BAER and Justice BALDWIN join the opinion.

Chief Justice CAPPY files a concurring opinion.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE files a concurring and dissenting opinion.

Justice EAKIN files a concurring and dissenting opinion.

Chief Justice CAPPY concurring.

I join the majority opinion except for the first two points raised by Justice Saylor's concurring opinion regarding this court's decision in *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564 (2005) and the discussion regarding transferred intent as set forth in *Commonwealth v. Huffman*, 536 Pa. 196, 638 A.2d 961 (1994).

Justice SAYLOR concurring.

I concur in the result and write to the following points.

requirements of law; and (2) Section 9711(e)(8), the catch-all mitigator, based on the circumstances of Jones' upbringing. The ineffectiveness claims raised on direct appeal did not even involve the (e)(3) mitigator, and, although one claim was related to the catch-all mitigator, we interpreted it as referring to Jones' character rather than his upbringing.

Of course, upon remand, Jones may not introduce trial counsel ineffectiveness claims that were either previously litigated or never pleaded. The remand is strictly limited to allow him to argue the claim that he pleaded but failed to develop, namely, that appellate counsel was ineffective for failing to raise trial counsel's failure to investigate and present evidence of Jones' mental health and the abusive and chaotic circumstances of his childhood.

As threshold matters, I do not read the decision in *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564 (2005), as requiring a demonstration by a post-conviction petitioner that "this Court erred in denying relief with respect to any of the underlying claims upon which the issues are premised" to avoid a determination that a claim is previously litigated. Majority Opinion at 217, 912 A.2d at 277. Indeed, *Collins* determined that claims of ineffective assistance of counsel raised on post-conviction review by their very nature are to be treated as distinct from underlying claims raised on direct appeal. *See Collins*, 585 Pa. at 61, 888 A.2d at 573. There is no indication in *Collins* that, with respect to such distinct claims, post-conviction petitioners are required to attack the Court's reasoning and/or holding on direct appeal. For example, it seems to me that a claim that appellate counsel's performance in presenting an issue impeded or foreclosed a favorable disposition of a meritorious claim would be wholly cognizable upon post-conviction review under *Collins* as it is written, but would not be under the new interpretation of that decision that the majority advances here.[1] Further, concerning the majority's discussion of waiver, I cross-reference my comments from *Commonwealth v. Marinelli*, 589 Pa. 682, 713–16, 910 A.2d 672, 690–91 (2006) (Saylor, J., concurring), as they are equally applicable here.

Regarding Issue 1 (jury instruction on first-degree murder), I believe that the trial court's decision to issue the standard instruction that "an intent to kill may be inferred by reason of the killer's use of a deadly weapon to a vital part of the body of his victim" was proper for different reasons than those identified by the majority. In the first instance, I recognize Appellant's argument that, given the Commonwealth's reliance

1. By way of a more specific example, under the majority's approach, a post-conviction petitioner apparently would be barred from raising a claim that his appellate counsel failed to properly raise and preserve an issue that was deemed waived on direct appeal, without mounting an attack on the merits of the appellate court's decision concerning waiver. I am not aware of any other jurisdiction applying such a restrictive approach to ineffectiveness claims, and, indeed, I believe that the approach is inconsistent with the entitlement to effective counsel on direct appeal.

on a theory of transferred intent—*i.e.,* that a specific intention to kill others can be transferred to the killing of unintended victims—the usual instruction concerning circumstantial evidence of specific intent arising from the use of a deadly weapon on vital parts of the victims' bodies lacked any rational underpinning in the case. However, although the Commonwealth certainly advanced transferred intent as a theory to explain the killings, the prosecutor also argued, in the alternative, that the killings of the victims was the intended result. *See* N.T., at 5852 (reflecting the district attorney's argument that "it is our contention that the [killings were] willful, deliberate, and premeditated, in that there was a time to select the weapon, there was a time chosen to do the deed, and there was an opportunity to decide what portion of the body to use the gun on"); *see also id.* at 5854 (describing the killings as directed and "efficient" and arguing transferred intent in the alternative). Moreover, the relevant circumstantial-evidence instruction expressly authorized a permissive, but did not require a mandatory, inference. *See id.* at 6028. Finally, in connection with this instruction, the jurors also were admonished as follows: "Note well that you are not to infer this intent to kill if the facts and circumstances indicate a contrary intent." *Id.* When considering that direct and transferred intent theories were presented to the jury in the alternative by the trial court and the prosecutor, it is my position that there is no logical incongruity, and Appellant's argument may be rejected for that reason.

On the aspect of this claim arising under *Commonwealth v. Huffman,* 536 Pa. 196, 638 A.2d 961 (1994), I concur in the result, because I am constrained by the prior decision in *Commonwealth v. Cox,* 581 Pa. 107, 863 A.2d 536 (2004), where the Court applied a rationale consistent with the majority reasoning here. *See id.* at 131–33, 863 A.2d at 550–51. As I suggested in *Cox,* however, it appears there is little left of *Huffman* under this Court's jurisprudence, since the Court is now relying on the issuance of a general accomplice liability charge as a method of circumventing *Huffman.* This, of course, will be true in every case in which a *Huffman* issue is

presented, since the problem identified in *Huffman* arises only in cases in which such general charges are issued, as there must be some basis upon which the defendant may be convicted on a vicarious liability theory in the first instance. *See Cox*, 581 Pa. at 149–51, 863 A.2d at 560–61 (Saylor, J., dissenting) (elaborating on the perspective that the fact of a general accomplice liability charge and/or a general charge to first-degree murder cannot overcome *Huffman's* stated rationale).[2] Thus, after *Cox*, it seems to me that the only surviving vestige of *Huffman* is that which remains to be litigated in the federal courts under due process theory. *See, e.g., Laird v. Horn*, 414 F.3d 419, 425–28 (3d Cir.2005).

Regarding Issue 2 (statements of Nassia Ford), I concur in the result solely because, upon review of the declarations and other submissions accompanying the PCRA petitions filed by Appellant, I find that there is no proffer of evidence to support a claim of prejudice relative to the layered ineffectiveness claim. For this reason, I agree that the PCRA court's decision to dismiss the claim without an evidentiary hearing need not be disturbed. Further, I note only that the Court in *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978), did expressly caution: "Where young children are involved, however, there is a greater risk that outside influences or imagination may have tempered the perception of an event and thus a court must exercise greater caution in allowing such an issue to reach the jury." *Id.* at 139 n. 6, 383 A.2d at 861 n. 6.

Justice CASTILLE concurring and dissenting.

I join Mr. Justice Eakin's Concurring and Dissenting Opinion. I write separately to address two discrete points con-

**2.** I recognize that in this particular case, Appellant's argument is crafted around the general conspiracy instruction. *See* Brief for Appellant at 19 (suggesting the possibility that the jury could have found Appellant guilty of the substantive offense of conspiracy to commit aggravated assault, which does not require a finding of specific intent to kill, and then relied upon this finding to support the first-degree murder conviction under the court's instruction that all members of a conspiracy are criminally responsible for the acts of any co-conspirator done to further the objects of the conspiracy).

cerning the remand, points which are unnecessary to Justice Eakin's dissent, which focuses upon the performance of trial counsel.

First, on the question of appellate counsel's ineffectiveness, which is the subject of the Majority's remand, I reiterate the position outlined in my concurring opinion in *Commonwealth v. Freeman May*, 587 Pa. 184, 898 A.2d 559, 578 (Castille, J., concurring, joined by Cappy, C.J., and Eakin, J.) that counsel need not raise any and all potentially viable claims at risk of being deemed ineffective. Rather, "[c]ounsel may forego even arguably meritorious issues in favor of claims which, in the exercise of counsel's objectively reasonable professional judgment, offered a greater prospect of securing relief." *Id.*, quoting *Commonwealth v. Jones*, 572 Pa. 343, 815 A.2d 598, 613 (2002) (Opinion Announcing Judgment of Court). Here, direct appeal counsel raised a litany of claims including claims affecting the penalty phase and trial counsel's alleged ineffectiveness for failing to present and argue additional points in mitigation. Any assessment upon remand must account for the deference that must be shown to direct appeal counsel's judgment, under standards extant at the time of the direct appeal.

Second, the Majority, in a footnote, appears to pre-ordain the outcome of any inquiry into whether the claim upon which it remands was previously litigated on direct appeal. The Majority summarily concludes that the mitigation claim here is distinct from that which was raised on direct appeal, premising its conclusion upon a brief discussion in a single paragraph in the direct appeal opinion by this Court. *See Commonwealth v. Jones*, 530 Pa. 591, 610 A.2d 931, 947 (1992). The proper measure of appellate counsel's performance does not involve a limited examination of the opinion on appeal, but obviously must also encompass examination of the brief that counsel filed. On remand, the PCRA court must consider that brief in determining the question of previous litigation.

Justice EAKIN Concurring and Dissenting.

I join in the majority's disposition, with the exception of its remanding on the basis of counsel's ineffectiveness for failing

to investigate and present mitigating evidence of appellant's inability to appreciate the criminality of his conduct. I also join the concurring and dissenting opinion of Justice Castille.

Although the PCRA court found there was substantial information available at the time of trial to support the (e)(3) mitigator, I do not believe the existence of such evidence in this case automatically means trial counsel was bound to present it on pain of being constitutionally ineffective.

> Although this Court must defer to the credibility findings of the PCRA court in cases where contested material facts are at issue, the determination of the reasonableness of counsel's conduct under the Sixth Amendment—the performance prong of *Strickland*—is not one warranting any particular deference to the PCRA hearing judge, particularly where, as here, that judge is not the same judge who presided at trial. *Cf. Williams v. Taylor*, 529 U.S. 362, 396–99[, 120 S.Ct. 1495, 146 L.Ed.2d 389] (2000).

*Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564, 590 (2005) (Castille, J., joined by Eakin, J., concurring and dissenting).

The majority relies on *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) and *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), in requiring that counsel investigate reasonably mitigating evidence of childhood abuse, family dysfunction and neglect, and mental health deficits. In *Commonwealth v. Gorby*, 587 Pa. 417, 900 A.2d 346 (2006), this Court cited these cases "for the proposition that capital counsel have an obligation to pursue all reasonably available avenues of developing mitigating evidence." *Id.*, at 362.

At the time of appellant's trial in 1983, however, these cases had not been decided, and the degree of investigation required for capital counsel to be deemed not ineffective had not evolved to the extent currently required. "The requirement that counsel[']s conduct be viewed in light of contemporaneously-governing law is central to any rational assessment of a claim of ineffectiveness." *Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761, 818 (2004) (Castille, J., joined by Eakin, J.,

concurring and dissenting). My esteemed colleague addressed this concern in *Gorby*, where the defendant's trial occurred in 1985, and the PCRA court held appellate counsel was ineffective in 1990 for failing to raise trial counsel's failure to present mitigating evidence:

> The law apparently is changing in this area, and what used to be viewed as reasonable attorney performance at trial is now labeled, in hindsight, unreasonable as a matter of law. I continue to find it difficult to blame counsel retroactively for failing to predict new obligations and refinements in obligations imposed by courts literally decades after counsel's conduct occurred.
>
> * * *
>
> Moreover, to prove counsel incompetent, in 1990, for failing to raise this sort of ineffectiveness claim, one must consult the *then-existing* legal landscape. The fact that later decisions of this Court and the U.S. Supreme Court have faulted the penalty phase investigations of certain trial lawyers, under certain facts, does not necessarily prove that all reasonable appellate lawyers were required to raise such claims in 1989–90, which is when appellant's direct appeal was briefed and argued by counsel. In my view, appellant has not discharged his affirmative burden of rebutting the presumption that appellate counsel's performance nearly two decades ago was reasonable under the law prevailing at the time.

*Gorby*, at 366–67 (Castille, J., joined by Eakin, J., dissenting) (citation omitted) (emphasis in original).

Appellant was tried in 1983, prior to the defendant in *Gorby*, and his direct appeal was in 1992, shortly after that in *Gorby*. The same rationale expressed in the dissent in *Gorby* rings true here; at the time of appellant's trial and direct appeal, the decisions of this Court regarding what is required of counsel during the penalty phase were not as exacting as today. *See Gorby*, at 366 (collecting cases).

Because I do not believe the reasonableness of counsel's actions should be assessed under more stringent requirements

enunciated subsequent to the time of such actions, I would hold counsel's performance was reasonable in the instant case. Appellant had no discernible mental health issues at the time of trial, and counsel had numerous lengthy conversations with him. *See* N.T. PCRA Hearing, 7/23/01, at 151, 166, 183. Counsel discussed appellant's school records, interviewed witnesses, employed an investigator, and talked to appellant's mother about his family background and childhood experiences. *Id.,* at 151, 154, 158, 166–69,181–82. Based on counsel's interactions with appellant, who was cooperative and appeared intelligent, counsel did not believe appellant needed to be evaluated by a mental health professional.[1] *Id.,* at 154–55, 163, 166, 183. Indeed, appellant's mental health expert testified he was not overtly psychotic, and the psychotic episodes he experienced were private and would not be evident to people observing him; he "would have needed to report his unusual perceptions to somebody in order for them to know about them...." *Id.,* at 60–61. Appellant's expert further admitted appellant initially denied to her that he had any unusual psychological experiences, until he became tired and worn down. *Id.,* at 23–24. As this Court noted in *Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33 (2002):

> The reasonableness of counsel's investigation and preparation for the penalty phase ... depends critically upon the information supplied by the defendant. Counsel cannot be found ineffective for failing to introduce information uniquely within the knowledge of the defendant and his family which is not provided to counsel.

*Id.,* at 45–46 (citation omitted).

In *Commonwealth v. Fears,* 575 Pa. 281, 836 A.2d 52 (2003), we held counsel was not ineffective for failing to present a defense psychiatric expert in support of mitigation, where the defendant did not display overt psychotic behavior, did not inform counsel of any mental impairment, and the defense expert testified at the PCRA hearing that a mental condition

---

1. Trial counsel further testified he did not think the introduction of character evidence would have been appropriate "in view of [appellant's] prior convictions." *Id.,* at 169.

may not be apparent from casual conversation or even psychiatric interviews. We observed:

> Counsel has a duty to undertake reasonable investigations or to make reasonable decisions that render particular investigations unnecessary.... [A]n evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based on the distorting effects of hindsight. Furthermore, *reasonableness in this context depends, in critical part, upon the information supplied by the defendant. Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it.*

*Id.*, at 71–72 (quoting *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 735 (2000) (citations omitted)) (emphasis added). *See also Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592 (2000) (counsel not ineffective for failing to present history of abuse where neither appellant nor his family revealed such information to counsel); *Commonwealth v. Rollins*, 558 Pa. 532, 738 A.2d 435 (1999) (counsel not ineffective for failing to present mental health mitigating evidence where counsel had no reason to know appellant might have mental problem); *Commonwealth v. Holland*, 556 Pa. 175, 727 A.2d 563 (1999) (counsel not ineffective for failing to call mental health expert at penalty phase, where forensic psychiatrist's reports and previous pre-sentence reports indicated appellant did not suffer from major mental illness); *Commonwealth v. Howard*, 553 Pa. 266, 719 A.2d 233 (1998) (counsel not ineffective where no evidence counsel had notice appellant had any mental illness); *Commonwealth v. Uderra*, 550 Pa. 389, 706 A.2d 334 (1998) (counsel not ineffective for failing to investigate appellant's history of psychological problems where appellant never revealed such information to counsel).

Based upon the case law regarding ineffectiveness for failing to present mitigating evidence prior to *Williams* and *Wiggins*, I would conclude counsel's performance was not deficient; in all other aspects, I join the majority's decision.