[J-57-2019] [MO: Donohue, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 74 MAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 1811 EDA |
| | : | 2016 dated March 23, 2018, |
| v. | : | reconsideration denied May 30, |
| | : | 2018, Affirming the PCRA Order of |
| | : | the Bucks County Court of Common |
| MIGUEL DIAZ, | : | Pleas, Criminal Division, at No. CP- |
| | : | 09-0006973-2007 dated May 12, |
| Appellee | : | 2016. |
| | : | |
| | : | SUBMITTED:  March 26, 2019 |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED:  March 26, 2020**

I respectfully dissent as I would apply *Strickland v. Washington*, 466 U.S. 668 (1984), to the circumstances presented in this case rather than *United States v. Cronic*, 466 U.S. 648 (1984), and I would remand to the Superior Court for consideration of appellee's ineffective assistance of counsel claim under the *Strickland* rubric.  I write separately to emphasize a fundamental flaw underlying the learned Majority's conclusion that "where the absence of a needed interpreter at a critical stage of trial obstructs his ability to communicate with counsel, *Cronic* applies such that the defendant need not prove that he or she was prejudiced by a Sixth Amendment violation."  Majority Opinion, slip op. at 1-2.

Initially, although unlike Justice Mundy, I do not find it to be a barrier to our review, I nevertheless share her observation regarding the rather unusual "appellate trajectory" of this case.  *See* Dissenting Opinion, slip op. at 2.  At each turn, the reviewing court

produced a different theory explaining why counsel's conduct rose to the level of ineffective assistance. First, the PCRA court applied a *Strickland* analysis and concluded counsel's errors — unpreparedness and failure to secure an interpreter — cumulatively rendered counsel's conduct ineffective. *See also* PCRA Court Opinion, 5/12/16 at 40 ("The failure to secure an interpreter, while in and of itself does not merit a new trial in this case, corroborates what [Diaz] testified to and what this court already knows — that trial counsel was completely unprepared for trial."). The Superior Court then decided counsel's failure to obtain an interpreter was itself dispositive, applying *Cronic* to the theory that Diaz was constructively absent from trial based on the PCRA court's finding that Diaz did not understand a majority of the proceedings on the first day. *Commonwealth v. Diaz*, 183 A.3d 417, 422-23 (Pa. Super. 2018); *see* PCRA Court Opinion, 5/12/16 at 36-37 (Diaz "did not understand what was occurring during the pre-trial motions proceedings, jury selection, or opening arguments, and did not understand about half of the complainant's testimony"). Now the Majority, unsatisfied with either theory, reaches yet another alternative conclusion: that counsel's failure to secure an interpreter constitutes *per se* ineffectiveness because it constructively denied Diaz his right to counsel under the Sixth Amendment.

I recognize the Majority's legal theory is not without some force. However, upon closer examination, I conclude the foundation upon which the Majority's conclusion rests is compromised by its inaccurate recitation of the record, particularly the PCRA court's findings. Indeed, the unspoken premise of the Majority's entire analysis is that Attorney Walfish misled the trial court when he stated that Diaz needed an interpreter only for his own testimony. *See* Majority Opinion, slip op. at 5 n.8 (asserting Diaz "effectively denied" at the PCRA hearing that he had advised his counsel that he required an interpreter only during his testimony). But, in fact, the record does not support the notion that Attorney

Walfish misled the trial court at all. Rather, the relevant findings by the PCRA court indicate only that counsel spoke with Diaz and, after their conversation, counsel informed the trial court that Diaz required an interpreter solely for his testimony. *See* PCRA Court Opinion, 5/12/16 at 34; *see also* N.T., 2/19/08 at 3-10 (indicating counsel and Diaz conferred about the request for an interpreter and after that discussion counsel informed the court Diaz wanted an interpreter only for his testimony).

Thus, instead of re-pouring the foundation the Majority spackles its fissures, apparently crediting Diaz's PCRA testimony that the only portion of the relevant conversation with Attorney Walfish that he understood was counsel's alleged statement "'that it wasn't up to him to stop the court, that he couldn't do that.'" *See* Majority Opinion, slip op. at 5 n.8, *quoting* N.T., 11/13/12 at 126. From this isolated and largely inapposite testimony, the Majority makes an unjustifiable leap to conclude that Diaz "effectively denied advising his counsel that he only required an interpreter during his own testimony, or otherwise agreeing that he did not require an interpreter on the first day of trial." *Id.* It seems obvious to me that the Majority has ascribed far more significance to Diaz's limited PCRA testimony on this point than the record can possibly bear.

Moreover, the Majority all but concedes that the PCRA court itself did **not** make a factual finding crediting that same testimony, and also seems to acknowledge the PCRA court did not make a factual finding crediting Diaz's so-called "effective denial." *Id.* Indeed, the best the Majority can muster to support its interpretation of Diaz's testimony, as well as its decision to credit that expansive interpretation in the first instance, is the following statement: "The PCRA Court made no finding of fact inconsistent with Diaz'[s] testimony[.]" *Id.* This explanation is circular, unconvincing, and incompatible with basic principles of appellate review. *See, e.g.*, *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012) ("The scope of review is limited to the findings of the PCRA court and the

evidence of record[.]"); *Commonwealth v. Jones*, 912 A.2d 268, 293 (Pa. 2006) ("The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference."); *see also Commonwealth v. Gibson*, 951 A.2d 1110, 1122 (Pa. 2008) ("[A] developed post-conviction record accompanied by specific factual findings and legal conclusions is an essential tool necessary to sharpen the issues so that differences at the appellate level can be mitigated."). Here, no such "specific factual finding[ ]," *see Gibson*, *supra*, exists and the Majority's suggestion to the contrary is nothing more than an attempt to expand the record to suit its revisionist narrative.

All we know, based on the record before us, is after Diaz's initial request was withdrawn, counsel conferred with him and presented a new, more limited request for an interpreter to the trial court.[1] Contrary to the Majority's belief, there is absolutely no evidentiary basis upon which to conclude counsel's representation to the trial court was anything other than a direct conveyance of Diaz's express wishes; nor is there any finding by the PCRA court which suggests otherwise.[2] In the absence of any such finding, the Majority is reduced to relying on the PCRA court's inapt statement that Diaz "did not understand what was occurring during the pre-trial motions proceedings, jury selection,

---

[1] In fact, the PCRA Court found Diaz not only understood some English, but was conversant in it. *See* PCRA Court Opinion, 5/12/16 at 34-38. This evidence buttresses a conclusion Diaz was able to communicate with counsel regarding his need for an interpreter. *Cf.* Majority Opinion, slip op. at 26, *quoting Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 382 n.10 (1979) ("the [Sixth] Amendment speaks of the 'assistance' of counsel, thus contemplating a norm in which the accused, and not the lawyer, is master of his own defense").

[2] Critically, as the proponent of this claim, Diaz was required to present evidence to overcome the presumption counsel provided effective assistance. *See Commonwealth v. Griffin*, 644 A.2d 1167, 1172 (Pa. 1994) (law presumes counsel was effective and defendant has the burden of proving otherwise); *Commonwealth v. Miller*, 431 A.2d 233, 235 (Pa. 1981) (same). On this record, it is clear Diaz failed to meet that burden.

or opening arguments, and did not understand about half of the complainant's testimony." PCRA Court Opinion, 5/12/16 at 36-37. Critically, this finding says nothing about the specific conversation counsel and Diaz had concerning Diaz's limited request for an interpreter.[3] Absent some finding by the PCRA court that counsel did not convey Diaz's request, or that Diaz did not understand his conversation with his counsel on this point, I fail entirely to see how counsel's actions were deficient. Indeed, as far as the record indicates, counsel ostensibly carried out Diaz's wishes precisely as requested.[4] That is the opposite of ineffectiveness.

From a practical standpoint, the Majority's holding here will have far-reaching implications for trial lawyers who represent multi-lingual clients. As a result of today's decision, even an attorney who properly acts at the behest of his or her client with respect to the client's request for an interpreter may later be found to have been *per se* ineffective, based on nothing more than the client's post-conviction assertion that he did not understand some portion of the trial. After all, that's precisely what happened here: counsel successfully secured an interpreter for the only portion of the trial that Diaz felt was necessary, *i.e.*, his own testimony. And yet now, more than a decade later, the Majority suddenly declares counsel was not only ineffective, but ***per se* ineffective**, for doing exactly what his client asked of him. This conclusion, which again is built on nothing more than unsupported assumptions, puts future trial counsel in the untenable position of

---

[3] I agree with Justice Mundy that, because the General Assembly passed 204 Pa. Code §105, the likelihood of a similar factual scenario repeating is marginal. *See* Dissenting Opinion, slip op. at 8-9. This removes any perceived urgency to extend *Cronic* on a suboptimal record.

[4] The Majority suggests I advance a waiver theory on this point, *see* Majority Opinion, slip op. at 5 n.8, but in actuality, I emphasize only that the PCRA court record does not support the conclusion Attorney Walfish was *per se* ineffective.

being subject to an ineffectiveness *per se* finding years later for doing exactly as instructed by the client.

Accordingly, I would reverse the Superior Court's decision to apply *Cronic* and remand for consideration pursuant to a *Strickland* analysis.