J-S23008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| NELSON ALEXANDER MAYERS | : | |
| Appellant | : | No. 361 EDA 2021 |

Appeal from the PCRA Order Entered January 4, 2021
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0002743-2018

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED AUGUST 9, 2021**

Nelson Alexander Mayers appeals from the order, entered in the Court of Common Pleas of Northampton County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm on the basis of the opinion authored by the Honorable Jennifer R. Sletvold.

On May 16, 2019, Mayers entered a negotiated guilty plea to one count of driving under the influence—third offense, graded as a misdemeanor of the first degree.  That same day, the court sentenced Mayers to a term of one to five years' incarceration.  Mayers did not file post-sentence motions or a direct appeal.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On January 27, 2020, Mayers, acting *pro se*, filed a timely first PCRA petition. Counsel was appointed and filed an amended petition, in which Mayers alleged ineffectiveness of plea counsel. Specifically, Mayers claimed that his plea was unlawfully induced by counsel, resulting in an unknowing and involuntary plea. Mayers further alleged that counsel failed to conduct any investigation, failed to file a requested pre-trial motion to suppress blood evidence, failed to meet and consult with him, and failed to pursue defenses requested by Mayers. The court held a hearing on September 24, 2020. On January 4, 2021, the court denied relief. Mayers filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Mayers raises the following claim for our review: "Whether the PCRA court erred in denying the requested relief where ineffective assistance of counsel caused Mayers to enter an involuntary and unknowing plea?" Brief of Appellant, at 4.

Our well-settled standard of review for an order denying a PCRA petition is as follows:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the

petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted). The PCRA court's credibility findings are binding on the appellate courts where such determinations are supported by the record. ***Commonwealth v. Treiber***, 121 A.3d 435, 444 (Pa. 2015).

Our Supreme Court has explained that:

To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence [that]: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S.[A.] § 9543(a)(2); (2) his claims have not been previously litigated or waived, ***id.***, § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic[,] or tactical decision by counsel[,]" ***id.***, § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which appellant could have had review as a matter of right has ruled on the merits of the issue." ***Id.***, § 9544(a)(2). "An issue is waived if appellant could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." ***Id.***, § 9544(b).

To be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish [that]: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. ***Commonwealth v. Chmiel***, [] 30 A.3d 1111, 1127 ([Pa.] 2011) ([citing] ***Commonwealth v. Pierce***, [] 527 A.2d 973, 975-76 ([Pa.] 1987)). Counsel is presumed to have rendered effective assistance. ***Commonwealth v. Ali***, [] 10 A.3d 282, 291 ([Pa.] 2010). Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. ***Commonwealth v. Jones***, [] 912 A.2d 268, 278 ([Pa.] 2006). Finally, because a PCRA petitioner must establish all the ***Pierce*** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails

- 3 -

under any required element, we may dismiss the claim on that basis.

**Treiber**, 121 A.3d at 444-45 (brackets and footnote omitted).

Additionally, our Supreme Court has reiterated that:

Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused [A]ppellant to enter an involuntary or unknowing plea. In determining whether a guilty plea was entered knowingly and intelligently, a reviewing court must review all of the circumstances surrounding the entry of that plea.

**Commonwealth v. Mitchell**, 105 A.3d 1257, 1272 (Pa. 2014) (citations omitted).

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. **Commonwealth v. Kpou**, 153 A.3d 1020, 1023 (Pa. Super. 2016). "Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise." **Commonwealth v. Jabbie**, 200 A.3d 500, 505 (Pa. Super. 2018). Where an appellant affirms on the record at the plea colloquy hearing that he is satisfied with his attorney's services in connection with his plea, the appellant is then precluded from contradicting himself in collateral proceedings and claiming he was coerced by counsel into pleading guilty. **See Commonwealth v. Muhammad**, 794 A.2d 378, 384 (Pa. Super. 2002), citing **Commonwealth v. Barnes**, 687 A.2d 1163, 1167 (Pa. Super. 1996); **see also Kpou**, 153 A.3d at 1024, citing **Commonwealth v. Pollard**, 832 A.2d 517, 523 (Pa. Super. 2003) ("A person who elects to plead guilty is bound by the statement he makes in open court while under oath and he may not

later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.").

During a plea colloquy, a trial court is required to elicit the defendant's understanding of six areas to ensure that the defendant comprehends the full impact and consequences of his plea: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) the right to a trial by jury; (4) the presumption of innocence; (5) the permissible range of sentences; and (6) the court's power to depart from any recommended sentence. *See* Pa.R.Crim.P. 590, Comment. *See also Kpou*, 153 A.3d at 1023. A written colloquy signed by the defendant may supplement an oral colloquy as long as there is some on-the-record examination of the defendant. *See* Pa.R.Crim.P. 590, Comment.

Here, we have reviewed the record, the briefs of the parties, and the applicable law, and conclude that the well-written and thorough opinion authored by Judge Sletvold correctly disposes of Mayers' claim on appeal. Specifically, Judge Sletvold notes that she engaged in a lengthy oral colloquy in which Mayers acknowledged: (1) that he was neither promised anything in exchange for his plea, nor forced or threatened in order to induce the plea; (2) that counsel answered all of his questions and he was satisfied with her representation; (3) the nature of the charge to which he was pleading guilty, i.e. DUI—third offense; (4) the factual basis for his plea; (5) the range of possible sentences; (6) his right to a jury trial; (7) the presumption of innocence; and (8) that he understood, completed, and initialed the written

guilty plea colloquy.[1]  *See* Trial Court Opinion, 1/4/21, at 4-7, quoting N.T. Guilty Plea/Sentencing Hearing, 5/16/19, at 1-6.

Additionally, Judge Sletvold credited the testimony of Mayers' plea counsel, who testified at the PCRA hearing that:  (1) she routinely reviews with her clients discovery, potential defenses, and plea offers; (2) Mayers never requested that she file pre-trial motions; (3) she saw nothing in the record to warrant the filing of pre-trial motions; (4) Mayers' desire was to quickly resolve the matter and receive inpatient treatment; (5) Mayers never indicated that he did not wish to proceed with his plea; (6) Mayers never sought to withdraw his plea after sentencing; and (7) "based on the discovery, including video from the DUI center, there is nothing that would have cause[d] her to change her course of action in this matter." *Id.* at 8-9, citing N.T. PCRA Hearing, 9/24/20, at 28.[2]

---

[1] In addition, the written plea colloquy confirmed Mayers' understanding that the court would not be bound by the terms of the plea agreement. *See* Guilty Plea Statement, 5/16/19, at ¶ 28.

[2] Further, in his written plea colloquy, Mayers affirmed that:  (1) he was satisfied with his attorney's representation, *see id.* at ¶ 42; (2) he had sufficient time to consult with his attorney before entering his plea, *see id.* at ¶ 43; (3) his attorney reviewed with him possible defenses to the charges and potential witnesses to call, *see id.* at 44; and (4) he had not asked his attorney to do anything for him in connection with the charges that the attorney had not done, *see id.* at 45.

In light of the foregoing, we affirm the denial of PCRA relief on the basis of Judge Sletvold's opinion and direct the parties to attach a copy of that opinion in the event of further proceedings in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2021

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :
                                  :
       v.                        :        No.   CR-2743-2018
                                    :
NELSON ALEXANDER MAYERS       :
                                  :
     Defendant.               :

## OPINION

Presently before the Court is the Defendant, Nelson Alexander Mayers's (hereinafter, "Defendant"), Petition for Post-conviction Relief pursuant to the Post-Conviction Relief Act ("PCRA"), which requests that his judgment of sentence, which was imposed on entry of his guilty plea, should be vacated and that he be permitted to proceed to trial. Defendant's PCRA Petition advances the following issues: 1) whether Defendant's conviction and sentence resulted from ineffective assistance of counsel which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; 2) whether Defendant's guilty plea was unlawfully induced; 3) whether the ineffective assistance of trial counsel, including failure to conduct defense investigation, failure to file pretrial motions, failure to meet with and consult Defendant, and failure to pursue trial defenses, caused Defendant to enter into an involuntary and unknowing plea; and 4) whether the sentence imposed is an illegal sentence because Defendant's prior Driving Under the Influence ("DUI") offense, disposed of by way of Accelerated Rehabilitative Disposition ("ARD"), was considered a prior offense for grading and mandatory minimum purposes. For the reasons discussed herein, the Defendant's Petition is denied.

1

## Facts and Procedural History

On or about July 10, 2018, Defendant was charged with a first offense general impairment DUI as an ungraded misdemeanor under 75 Pa.C.S.A. § 3802(a)(1); a third offense DUI, highest rate of alcohol, as a misdemeanor of the first degree under 75 Pa.C.S.A. § 3802(c); and a summary traffic offense under 75 Pa.C.S.A. § 3323(b) for failure to stop at a stop sign. On November 8, 2018, Defendant appeared *pro se* for his arraignment at which time the matter was set for trial on January 28, 2019. On December 5, 2018, Chief Public Defender, Nuria DiLuzio ("Attorney DiLuzio"), entered her appearance to represent Defendant in this matter.

In the interim of time between his formal arraignment and trial date, Defendant was at liberty on bail. On January 28, 2019, Defendant's trial date, Defendant failed to appear for Court, and a bench warrant was issued. On or about April 2, 2019, Defendant was apprehended in the state of New York on the bench warrant and placed in Northampton County Prison.

On April 10, 2019, a guilty plea was scheduled to take place in this matter; however, no plea was taken on that date. On May 16, 2019, Defendant entered into a negotiated guilty plea to the charge of third offense DUI as a misdemeanor of the first degree under 75 Pa.C.S.A. § 3802(c). On that same date, Defendant was thereafter sentenced to a period of incarceration of one to five years in the Northampton County Prison.

On May 29, 2019, Defendant filed a *pro se* Motion for removal of his inpatient tag. On January 27, 2020, Defendant filed a timely *pro se* PCRA petition. Defendant's court-appointed PCRA counsel, Robert Eyer, Esq., subsequently filed the instant Amended Petition for Post-Conviction Collateral Relief on July 20, 2020. On September 24, 2020, this Court held a PCRA hearing on the Amended PCRA petition at which Defendant presented his own testimony, as well as the testimony of his prior counsel, Attorney DiLuzio.

2

## Discussion

The PCRA provides for an action by which innocent persons convicted of crimes that they did not commit and persons serving illegal sentences may obtain relief. 42 Pa.C.S. § 9542. To be eligible for relief pursuant to the PCRA, the petitioner must prove by a preponderance of the evidence the following: first, he must prove that he has been convicted of a crime under the laws of this Commonwealth and that he is serving a sentence of imprisonment, probation, or parole for the crime; second, he must prove that the conviction or sentence resulted from one of the enumerated errors listed in § 9543(a)(2); third, he must prove that the allegation of error has not been previously litigated or waived; finally, he must prove that the failure to litigate the issue prior to or during trial, during unitary review, or on direct appeal could not have been the result of any rational, strategic, or tactical decision by counsel. 42 Pa.C.S. § 9543(a).

Here, Defendant's first three arguments in his PCRA Petition are based upon his belief that his guilty plea was entered unknowingly and involuntarily due to an alleged ineffectiveness of his guilty plea counsel. One seeking post-conviction relief on the basis of an alleged unknowing or involuntary guilty plea bears the burden of proving by a preponderance of the evidence that the plea was involuntary and unknowingly entered. *Com. v. Carter*, 464 A.2d 1327, 1334 (Pa. Super. 1983). To establish that a guilty plea is voluntary and knowing, the plea colloquy must ascertain the factual basis for the plea and that the defendant understands the nature of the charges to which he is pleading guilty, his right to a jury trial, the presumption of innocence, the sentencing ranges for the charges against him, and the plea court's power to deviate from any recommended sentence. *Com. v. Flanagan*, 854 A.2d 489 (Pa. 2004); *Com. v. Reid*, 117 A.3d 777, 782 (Pa. Super. 2015); *Com. v. Morrison*, 878 A.2d 102, 107 (Pa. Super. 2005). These matters may also be shown by a written plea colloquy read and signed by the

3

defendant and made part of the record when supplemented by an oral, on-the-record examination. *Reid*, 117 A.3d at 782-83; *Morrison*, 878 A.2d at 108. Once the defendant has entered a guilty plea, "it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." *Com. v. Bedell*, 954 A.2d 1209, 1212 (Pa. Super. 2008) (quoting *Com. v. Stork*, 737 A.2d 789 (Pa. Super. 1999).

Here, Defendant signed a written plea colloquy, and this court conducted an oral colloquy. These colloquies addressed Defendant's ability to understand the proceedings, the fact that he had sufficient opportunity to consult with trial counsel, and his understanding of his right to a jury trial, the presumption of innocence, the Commonwealth's burden of proof, the possible sentences for all of the non-summary offenses with which he was charged, and the plea agreement. N.T. 5/16/19, Guilty Plea and Sentencing at pp. 1-6; Guilty Plea Colloquy Form.

This Court conducted the following on-the-record oral colloquy with Defendant:

Q. Mr. Mayers, it's my understanding that in Case Number 2743 of 2018 that you wish to plead guilty to one count of DUI, highest rate of blood alcohol, as an ungraded misdemeanor; is that correct?

A. Yes.

Q. Have you had any drugs, alcohol, or medication in the past 24 hours?

A. No.

Q. Did anyone promise you anything in exchange for your plea of guilty?

A. No.

Q. Did anyone force you or threaten you to get you to plead guilty?

A. No.

Q. You are represented by Ms. DiLuzio. Did she answer all of your questions?

A. Yes.

4

Q. Have you been satisfied with her representation?

A. Yes.

Q. This is a copy of the written charge against you; it is called the information. Sir, my understanding is you received it and signed the back of the second page indicating your desire to plead guilty; is that correct?

A. Yes.

Q. There are three counts on this information. You are pleading guilty only to count 2, which is the charge I indicated. The other counts will be dismissed. Is that also your understanding, sir?

A. Yes.

Q. The charge of DUI, third offense, highest rate of blood alcohol in violation of 75 PA CSA Section 3802(C) is an ungraded misdemeanor. There's a mandatory minimum period of -- you're shaking your head.

MS. McCLURE: M-1, Your Honor.

THE COURT: Sorry. Thank you. It's an ungraded misdemeanor on the information. May I amend the information?

MS. DILUZIO: Yes.

THE COURT: It is so amended.

Q. Sir, it's a misdemeanor of the first degree. There's a mandatory minimum period of incarceration of one year up to a maximum period incarceration of five years. There's a minimum fine of $2,500 mandatory up to a maximum possible fine of $10,000. There's an 18-month license suspension, and you'll have to undergo -- do you have a CRN and drug and alcohol on him?

MS. DILUZIO: Yes. The drug and alcohol was completed and he's recommended for inpatient treatment.

Q. You'll have to abide by treatment recommendations contained in your evaluations. Do you understand? Do I have them? Thank you.

Q. Sir, you do not have to plead guilty. You have a right to have your case tried by a judge or a jury. If you proceeded with a jury trial, they would all have to be residents of Northampton County. They would presume that you were innocent until the Commonwealth proved your guilt beyond a reasonable doubt. They could not find you guilty unless they all agreed to do so.

5

You could cross-examine any witness that testified against you. You could take the witness stand in your own defense if you wanted to. If you decided not to testify, the jury could not think anything negative or bad from your silence. Do you understand that you have these rights?

A. Yes.

Q. You're waiving them with your guilty plea. Is that your wish?

A. Yes.

Q. If we sentence today, and I do believe we can because I have everything I need to impose sentence, then you are forever waiving these appeal rights that I just explained to you. Do you understand?

A. Yes.

Q. Can you read and write?

A. Yes.

Q. What's the last grade that you finished in school?

A. 12th.

Q. This is a guilty plea statement or colloquy that I believe you completed. Did you complete this document?

A. Yes.

Q. Was there anything on this form that you did not understand?

A. No.

Q. You initialed each page of the document?

A. Yes.

Q. You signed the last page of the document indicating your desire to plead guilty?

A. Yes.

Q. Do you admit that you were operating a vehicle while you were a .18?

6

A.      That's correct.

THE COURT:  Anything else for the guilty plea itself?

MS. DILUZIO:  No.

THE COURT:  I'll accept the guilty plea as knowing and voluntary.  Is

there -- you wish to waive PSI and proceed to sentence?

MS. DILUZIO:  Of course.

THE COURT:  Any legal reason why sentence cannot be imposed?

MS. DILUZIO:  No.

N.T. 5/16/19, Guilty Plea and Sentencing at pp. 1-6.  Following the guilty plea and sentencing proceedings on May 16, 2019, the Court advised him of his post sentence rights and that he has a right to appeal the sentence. *Id.* at p. 8.  At the time of the PCRA hearing, Defendant testified that he reviewed post sentence rights information with the Court and with Attorney DiLuzio and that he signed the post sentence colloquy. *Id.* at p. 57.  Based upon the above oral colloquy and the supplemental written colloquy, as well as the testimony presented at the PCRA hearing discussed below, we find that Defendant entered his plea of guilty voluntarily, knowingly, and intelligently.

During the hearing on the PCRA Petition, Attorney DiLuzio was questioned about her representation of Defendant.  Attorney DiLuzio was Defendant's public defender for this matter, beginning her representation of Defendant on December 5, 2018 while Defendant was at liberty on bail. N.T. 9/24/20, at pp. 3-4, 11-12.  Attorney DiLuzio testified that she did not have any contact with Defendant until after March 19, 2019, at which time Defendant was incarcerated in the Northampton County Prison because Defendant previously fled to New York and was apprehended on a bench warrant. *Id.* at pp. 4-5.

7

While Attorney DiLuzio could not recall whether she met with Defendant to discuss this case on multiple occasions, she testified with certainty that she met with Defendant in the Northampton County Prison on at least one occasion after Defendant was extradited from New York. *Id.* at pp. 5-6, 10. While Attorney DiLuzio could not recall anything specific about her meeting with Defendant, she testified that as a matter of course, she reviews with all of her clients the discovery materials, potential trial defenses, and the guilty plea statement, and she discusses the option of going to trial or accepting a plea, as well as what the statutory mandatory minimums are such that an informed decision can be made. *Id.* at pp. 6-7, 9, 13.

Attorney DiLuzio testified that she did not recall Defendant ever asking or directing her to file any pretrial motions. She stated, "[t]hat I would remember. If he asked me to file motions, I would have filed them." *Id.* at p. 7. She further stated:

> Not only did I not see anything that would warrant a motion, I clearly didn't identify any defenses and he pled guilty within a month or so of being brought over from the prison. So it was fairly quickly. My recollection that he wanted to resolve the case and he wanted to be in a position to go to inpatient treatment even though later he didn't like the inpatient treatment because he wanted to remove the tag, which is not something we do. We don't substitute our judgment for the judgment of the drug and alcohol evaluators.

*Id.* at p. 15. Attorney DiLuzio testified that there was nothing "remarkable" about this DUI case, and after her review of the circumstances surrounding the subject vehicle stop and blood draw, she did not identify any issue that could have been the subject of any pretrial motion. *Id.* at pp. 8-9, 14.

With respect to the written guilty plea colloquy, Attorney DiLuzio testified that she went over every question with Defendant and discussed and reviewed same with Defendant, including the questions of whether there was anything that he asked his attorney to do that she has not done and whether he asked his attorney to do anything for him in connection with the charges for his

defense that she has not done. *Id.* at pp. 18, 21. Defendant initialed the bottom of each page of the written guilty plea colloquy. *See* Guilty Plea Colloquy. Although he did not sign the final page of the colloquy, he initialed and dated the bottom of that page as well. *Id.*; N.T. 9/24/20 at p. 30. Attorney DiLuzio testified that Defendant never indicated to her that he did not want to proceed with the guilty plea or that he wanted her to file any motions; specifically, he never raised any such issues at the time that she reviewed the guilty plea colloquy with Defendant nor at the time that she was with Defendant on the date of the plea. N.T. 9/24/20 at pp. 20, 22. She stated that if Defendant indicated that he did not want to go forward with the plea, she would have asked that Defendant be returned to the prison, where she would have gone to speak with him again. *Id.* at pp. 20-21.

Attorney DiLuzio testified that she also reviewed with Defendant the post sentence colloquy. *Id.* at p. 24. After Defendant entered his plea, Attorney DiLuzio did not receive any communication from him about wanting to file any post sentence motions or to withdraw the guilty plea, and even if he did wish to do so, the likelihood of him being permitted to withdraw his plea post sentence would be low. *Id.* at pp. 11, 24, 26. Attorney DiLuzio testified at the PCRA hearing that based on the discovery, including the video from the DUI center, there is nothing that would have cause her to change her course of action in this matter. *Id.* at p. 28.

Defendant presented his own testimony at the PCRA hearing. Defendant confirmed that he first met with Attorney DiLuzio in the Northampton County Prison. *Id.* at pp. 37-38. When asked about what the substance of that meeting was, Defendant testified that Attorney DiLuzio "pretty much just gave me an offer of one to five years. She didn't explain to me what the circumstances of it was, what my fines would be, if I would be on parole or probation. I had no understanding about the sentencing." *Id.* at p. 38. Defendant testified that during his second

9

meeting with Attorney DiLuzio, despite informing Attorney DiLuzio about the subject vehicle stop, Attorney DiLuzio "didn't find a reason to go forward with a trial because she felt like I was guilty and she just offered me the deal flat out." *Id.* at pp. 39-40. Defendant stated his belief that "[s]he just didn't want to put any effort towards defending me or finding out a way she could defend me." *Id.* at p. 40. Defendant testified that the third time he met with Attorney DiLuzio was on the day of his sentencing. *Id.* at pp. 40-41. When asked whether he raised with Ms. DiLuzio any concerns he had about the matter, Defendant testified, "I just figured I got to play ball with them." *Id.* at p. 41. Defendant testified that Attorney DiLuzio never provided him with a copy of his discovery materials and that she told him that "it was pretty much cut and dry." *Id.* at p. 42.

Regarding the written guilty plea colloquy, Defendant testified that Attorney DiLuzio introduced that document to him inside the Northampton County Prison. *Id.* at p. 43. He stated that she asked him a few questions but could not remember specifically which ones. *Id.* Despite the presence of his initials on each page of the colloquy, Defendant could not remember whether he signed his initials on the pages of the colloquy form. *Id.* Defendant also stated that he did not recall telling the Court that he did sign the guilty plea colloquy at the time of his sentencing. *Id.* at p. 45. When asked whether he wanted to plead guilty when the statement was filled out, Defendant testified, "I felt like it was induced. I felt like I didn't have a way out. I just felt like I had to." *Id.* at p. 43.

Defendant testified that he did try communicating with Attorney DiLuzio several times after he entered his guilty plea to file motions for reconsideration and/or an appeal. *Id.* at pp. 45-46. Defendant explained that he wanted to take back his guilty plea because he felt like Attorney DiLuzio could have done more for him. *Id.* at p. 46.

10

On cross-examination, Defendant acknowledged that he filed a *pro se* motion to have his inpatient tag removed, and while he could have filed a motion to withdraw his guilty plea, he never filed any such motion. *Id.* at pp. 47-48. While Defendant expressed dissatisfaction with Attorney DiLuzio's representation, Defendant testified that he never filed any motions asking for new counsel other than Attorney DiLuzio. *Id.* at pp. 49-51. Further, Defendant conceded that at the time of his guilty plea, he never expressed to the Court that he did not want to enter his guilty plea, and he testified under oath on that day that no one promised him anything in exchange for the plea and that no one forced him or threatened him to plead guilty. *Id.* at pp. 51-54.

The Court finds credible Attorney DiLuzio's testimony that she sufficiently reviewed the colloquy and Defendant's corresponding rights with Defendant and that after this review, Defendant knowingly and voluntarily signed his initials indicating his wish to enter a plea of guilty. The Court also finds credible Attorney DiLuzio's testimony relative to her having explained the sentencing guidelines and the sentence Defendant could receive under the plea agreement. Viewing this case in its entirety, we find that Defendant entered his plea knowingly and voluntarily and is merely dissatisfied with the sentence imposed.

As Defendant stated in the oral colloquy with this Court, it was his decision to enter the guilty plea, and he was satisfied with his legal representation. He agreed with the facts upon which the charges were based. Defendant also testified that he had not been coerced or threatened to plead guilty and elected to enter the instant plea, knowing that he could have proceeded to trial. The record is clear that Defendant was aware of the maximum sentence that could be imposed and knew that there was no agreement as to what sentence would be imposed. As such, he cannot now claim that his plea was involuntary based on a lack of understanding of the possible sentences. *Com. v. Palmer*, 399 A.2d 718 (Pa. Super. 1979) (where guilty plea

11

colloquy record indicating that no threats, promises, representations or plea bargains were made to defendant by anyone, including defendant's own counsel, as to sentence to be imposed on guilty plea was not entitled to withdraw, by means of PCRA, guilty plea on ground that he was induced to plead guilty by assurances of his own counsel that he would be given sentence of one to two years plus credit for time in jail). Further, while Defendant hoped and possibly expected to receive a different sentence, the mere fact that he is now dissatisfied with the actual sentence is not a proper basis to find the plea was not knowing and voluntary. *Com. v. Waddy*, 463 Pa. 426, 429, 345 A.2d 179, 180 (1975) (disappointed expectations will not alone vitiate a guilty plea); *Com. v. Sanutti*, 454 Pa. 344, 347, 312 A.2d 42, 44 (1973); *Com. v. Scott*, 465 A.2d 678, 680 (Pa. Super. 1983). Accordingly, there is no merit to this claim for relief.

In his PCRA Petition, Defendant further argues that his plea was not voluntarily, knowingly, and intelligently entered because it was unlawfully induced, and the advice of guilty plea counsel to go forward with the guilty plea was not within the range of competence demanded of attorneys in criminal cases. Specifically, Defendant contends that Attorney DiLuzio was ineffective for failing to file pretrial motions, including a motion to suppress with regard to blood evidence, failing to meet with and consult with Defendant, and failure to pursue trial defenses as Defendant requested.

A criminal defendant has the right to effective assistance of counsel in deciding whether to plead guilty. *Com. v. Velazquez*, 216 A.3d 1146 (Pa. Super. 2019); *Com. v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002). Allegations of ineffectiveness in conjunction with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness cause the defendant to enter an involuntary or unknowing plea.[1] *Hickman*, 799 A.2d at 141. "Where the defendant enters his

---

[1] In determining a defendant's actual knowledge of the implications and rights associated with a guilty plea, the court is free to consider the totality of the circumstances surrounding the plea. *Com. v. Allen*, 732 A.2d 582, 588-89

12

plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Velazquez*, 216 A.3d at 1149-50 (quoting *Com. v. Wah*, 42 A.3d 335 (Pa. Super. 2012)).

A petitioner alleging ineffectiveness of counsel must demonstrate that (1) his underlying claim is of substantive and arguable merit, (2) counsel had no reasonable basis for his or her actions or failure to act, and (3) there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different. *Com. v. Rega*, 593 Pa. 659, 933 A.2d 997 (2007); *Com. v. Moore*, 569 Pa. 508, 805 A.2d 1212 (2002).

The court is to presume that counsel was effective, and the petitioner bears the burden of proving otherwise. 42 Pa. C.S.A. § 9543; *Lambert*, 765 A.2d 306, 327 (Pa. Super. 2000). Relating to the petitioner's burden of proof our Supreme Court has stated:

> The traditional requirements for relief pertaining to claims of ineffective assistance of counsel mandate that the petitioner establish actual prejudice (in terms of undermining confidence in the outcome of his trial), as well as the arguable merit of the underlying claim and an absence of some reasonable strategy on counsel's part in terms of the act or omission resulting in the underlying claim not having been previously advanced or vindicated.

*Com. v. Halley*, 582 Pa. 164, 168 n.1, 870 A.2d 795, 798 n.1 (2005) (citing *Com. v. Pierce*, 515 Pa. 153, 158-60, 527 A.2d 973, 975-77 (1987)). A petitioner must plead, present evidence relative to, and prove each assertion of ineffectiveness. Further, the petitioner bears the burden of proving all three prongs of this test and the failure to prove any prong will be fatal to his claim of ineffectiveness. *Com. v. Brown*, 582 Pa. 461, 474, 872 A.2d 1139, 1146 (2005). *See also Com. v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998); *Com. v. Baker*, 531 Pa. 541, 562, 614 A.2d 663, 673 (1992).

---

(Pa. 1999). The court may consider a wide array of relevant evidence in order to determine the validity of a claim and plea agreement including, but not limited to, transcripts from other proceedings, off-the-record communications with counsel, and written plea agreements. *Allen*, 732 A.2d at 589.

If the claim is without arguable merit, the court's inquiry ends as counsel will not be deemed ineffective for failing to pursue a meritless issue. *Com. v. DiNicola*, 751 A.2d 197 (Pa. Super. 2000). However, if the underlying claim is of arguable merit, the defendant must establish that the course of action chosen by counsel had no reasonable basis designed to effectuate the defendant's interests. *Id.* The defendant must then establish that but for counsel's deficient performance, the result of his trial would have been different. *Id.* The Pennsylvania Supreme Court has stressed that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. *Com. v. Paddy*, 609 Pa. 272, 292, 15 A.3d 431, 442-43 (2011).

Here, Defendant does not specify any inaccurate legal advice from Attorney DiLuzio which would concern a critical element of any of his charges. Defendant generally contends that he wanted Attorney DiLuzio to file motions challenging the blood draw and/or the vehicle stop and that depending on the outcome of those motions, he wished to proceed to mount a trial defense. Defendant simply states that there is a reasonable probability that, but for Attorney DiLuzio's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. *See* Def.'s Brief in Support of PCRA Relief at p. 10. He does not specifically identify how he was misled by Attorney DiLuzio or what error undermined confidence in whether he would have pleaded guilty.

We find that the PCRA record shows that Attorney DiLuzio gave Defendant advice concerning his sentence exposure and risks of going to trial. Attorney DiLuzio testified that she reviewed all discovery materials in this case, including the video from the DUI center at the time of Defendant's blood draw. N.T. 9/24/20 at pp. 6, 8, 12, 28, 32. She testified that she saw

14

nothing in the video that would have provided for a meritorious pretrial motion. *Id.* at pp. 14-15, 28, 32-33.

During the PCRA hearing in this matter, the video of Defendant's blood draw was played. Upon review of this video, this Court observed Defendant voluntarily extending his arm for the phlebotomist to draw his blood at the DUI center. Defendant agreed that he held out his arm for blood to be taken. *Id.* at p. 59. While Defendant appeared to be agitated and yelling profanities for much of the time at the DUI center, we did not observe in the video that Defendant refused to have his blood drawn. Although Defendant testified that he did not tell the phlebotomist not to take her blood, he stated that it was "implied that [he] didn't want to give [his] blood." *Id.* at p. 59.

Defendant attempted to explain how the officer coerced him to give his blood. He stated that "[t]he officer physically bent my arm" (*id.* at p. 60); however, upon the playing of the video for the Court, Defendant was unable to demonstrate that the officer at any time forced him to give blood. Defendant then stated, "I didn't say that he held – I didn't say he forced me physically and held me down for the blood to be drawn. But he did use some physical persuasion to make me give the blood without restraint." *Id.* at p. 61. Defendant admitted that no one in the video held his arm down and made him give blood. *Id.* at p. 62.

Attorney DiLuzio testified that Defendant never asked her to file a pretrial motion, that Defendant did not indicate that he did not wish to enter a guilty plea, and that Defendant did not ask her to file any post-sentence motion for reconsideration. Attorney DiLuzio did not recall Defendant wanting to file any pretrial motion, and, based upon the video of Defendant's blood draw at the DUI Center and other discovery in this matter, she saw no reason to file one. We find credible Attorney DiLuzio's testimony.

15

Based upon the evidence presented, Defendant has failed to sustain his burden of establishing that Ms. DiLuzio had no reasonable basis for her actions in not filing pretrial motions and/or pursuing trial defenses. Based on our review of the video of the blood draw, as well as Defendant's own admission that he held out his arm for his blood to be taken, we do not find that any pretrial motion filed on the basis of this blood draw would have resulted in the suppression of evidence and/or would otherwise have had merit. We do not find Defendant's testimony credible that he requested that Attorney DiLuzio file such motions. Even if Defendant did request same, counsel cannot be considered ineffective for failing to assert a meritless claim. *Com. v. Pirela*, 556 Pa. 32, 41, 726 A.2d 1026, 1030 (1999). As such Defendant's claim of ineffective assistance of counsel must fail as he failed to establish any of the three prongs where the failure to establish even one is fatal. *Brown*, 582 Pa. at 474.

Defendant's final issue in his Amended PCRA Petition is that "the sentence imposed may be an illegal sentence ... [because] any prior offense disposed of by way of ARD was considered a prior offense for grading and mandatory minimum purposes for the instant offense." *See* Def.'s Am. PCRA at 12. In asserting this issue, Defendant argues that, pursuant to the Pennsylvania Superior Court case of *Commonwealth v. Chichkin*, 2020 Pa. Super. 121 (May 20, 2020), his first DUI offense must not be considered when calculating grading and mandatory minimum sentence because that offense was disposed of by way of ARD.[2] *See* Def.'s Brief in Support of PCRA Relief at p. 11. Defendant contends that he was sentenced as a "third offender" when his sentence should have been as a "second offender." *Id.* We find that this issue is also meritless.

---

[2] The *Chichkin* Court found that the use by trial courts of a prior acceptance of ARD as a "prior offense" for sentencing purposes violated a defendant's right to both procedural and substantive due process as set forth in *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013).

16

Defendant entered his guilty plea and was sentenced on May 16, 2019. Defendant did not file a direct appeal. Defendant's Judgment of Sentence, therefore, became final on or about June 15, 2019. *See* 42 Pa.C.S. § 9545 (b)(3); Pa.R.A.P. 903 (a). Defendant filed the instant PCRA Petition, his first, on January 27, 2020, challenging, *inter alia*, the legality of his sentence pursuant to *Chichkin*.

To be eligible for relief pursuant to the PCRA, Defendant must establish, *inter alia*, that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S. § 9543 (a)(3). "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal [,] or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544 (b). As a general rule, issues presented in a post-conviction proceeding are considered in light of the law as it existed at the time the defendant's conviction became final. *See Com. v. Robinson*, 82 A.3d 998, 1021 (Pa. 2013); *Com. v. Fears*, 86 A.3d 795, 817 (Pa. 2014). Therefore, new rules of law that are given retroactive effect are not applicable to the resolution of issues raised in a PCRA proceeding unless the new rule was handed down during the time the defendant's direct appeal was pending and the issue was raised in the direct appeal. *See Com. v. Cabeza*, 469 A.2d 146 (Pa. 1983) (where appellate decision overrules prior law and announces a new rule of law, new rule applies to all cases where issue is preserved at all stages, including direct appeal, except where rule is specifically declared to be prospective only). *See also Com. v. Tilley*, 780 A.2d 649 (Pa. 2001).

Here, Defendant's Judgment of Sentence became final on or about June 15, 2019, nearly one year after the Pennsylvania Superior Court decided *Chichkin* on May 20, 2020. Although Defendant filed a PCRA Petition, because his sentence became final before *Chichkin* was decided, the mandates of *Chichkin* are not applicable to Defendant's case. *See Com. v. Riggle*,

17

119 A.3d 1058 (Pa. Super. 2015) (declining to give *Alleyne* retroactive effect to cases on timely collateral review when the defendant's judgment of sentence had been finalized before *Alleyne* was decided).

We are unaware of any case law that has ruled that *Chichkin* is to apply retroactively, and Defendant has not provided us with same. "[A] new rule of law does not automatically render final, pre-existing sentences illegal." *Com. v. Washington*, 636 Pa. 301, 142 A.3d 810, 814 (2016). "...[A]n old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Com. v. Ross*, 140 A.3d 55, 59 (Pa. Super. 2016) (citations omitted). "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rule of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (citations omitted). "Substantive rules are those that decriminalize conduct or prohibit punishment against a class of persons." *Id.* (citation and quotation omitted). "[R]ules that regulate only the manner of determining the defendant's culpability are procedural." *Id.* (citations and quotation omitted).

Relevant to the instant case, 75 Pa. C.S. §3804 sets forth the penalties for DUI offenses. This section effectively increases the punishment when a driver has additional DUI offenses. The new *Chichkin* rule, as it applies to Pennsylvania's DUI statutes providing for increased penalties, does not alter the range of conduct or the class of persons punished by the law. Rather, DUI remains a crime, and the new rule merely precludes application of a prior ARD sentence to increase the sentencing penalty in a DUI case. This change is procedural because it regulates only the manner of determining the degree of Defendant's culpability and punishment. Therefore, Defendant's sentence is not illegal on the basis of the *Chichkin* decision, and he is not entitled to relief.

18

## CONCLUSION

Wherefore, for the reasons stated herein, Defendant's Amended Petition for Post-Conviction Collateral Relief is **DENIED**.

BY THE COURT:

_____
JENNIFER R. SLETVOLD, J.

19